ON REHEARING

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 03-4848

RONALD COLLINS,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

No. 03-4895

RONALD COLLINS,
*Defendant-Appellee.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-03-180)

Argued: September 30, 2004

Decided: July 12, 2005

Before MICHAEL and DUNCAN, Circuit Judges,
and Roger W. TITUS, United States District Judge for the District
of Maryland, sitting by designation.

Affirmed and remanded in part and judgment withheld in part by published opinion. Judge Titus wrote the opinion, in which Judge Michael and Judge Duncan joined.

**COUNSEL**

**ARGUED:** Matthew Alan Wartel, Alexandria, Virginia, for Appellant/Cross-appellee. Michael James Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-appellant. **ON BRIEF:** Paul J. McNulty, United States Attorney, LeDora Knight, Assistant United States Attorney, Alexandria, Virginia, for Appellee/Cross-appellant.

**OPINION**

TITUS, District Judge:

Ronald Collins appeals his conviction for conspiracy to distribute fifty (50) or more grams of a mixture containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and maintaining and controlling a room or enclosure for the purpose of unlawfully storing, distributing, and using a controlled substance in violation of 21 U.S.C. § 856(a)(2). Collins also appeals his sentence for the above convictions. In addition, the Government cross-appeals, arguing that the district court erroneously sentenced Collins.

Collins was indicted for his role in a larger drug conspiracy. Some of the members of that conspiracy testified against Collins at trial, including his nephew, Lionel Kearse. The thrust of the case for the defense was an attempt to discredit the various witnesses and informants who testified for the government. The jury, presumably finding at least some of the informants credible, found Collins guilty on both counts.

In his appeal, Collins raises five issues. First, he argues that the government attorney engaged in prosecutorial misconduct by making an improper "vouching" statement during her rebuttal closing argument. Second, he argues that the Government made a late disclosure of *Brady* material. Third, he argues that 21 U.S.C. § 841 is unconstitutional. Fourth, he argues that the district court gave improper jury instructions. Fifth, he argues that, under *Apprendi* and *Blakely*, his sentence is unconstitutional, as the facts used to sentence him were

not determined by a jury beyond a reasonable doubt.[1] In addition, the Government has filed a cross-appeal arguing that the district court's determination of Collins' criminal history was in error. Each of Collins' issues on appeal will be considered and disposed of *seriatim*, and the Government's cross-appeal will be considered last.

*Improper Argument (Vouching)*

Collins' first argument on appeal is that the prosecuting attorney made an improper statement during her rebuttal closing argument, unconstitutionally tainting the outcome of the case. As this issue raises a question of law, the appropriate standard of review is *de novo*. *United States v. Cheek*, 94 F.3d 136, 140 (4th Cir. 1996). The allegedly improper statement made by the prosecutor is as follows:

> That [plea] agreement is a contract between them [the cooperators] and the United States, which means that they have certain functions, and we have certain functions. Their function is to tell the truth. Each witness who got up there said that his job or responsibility was to tell the truth.
>
> The government is always seeking to determine whether they are telling the truth, and we do not take lightly the fact that we have an agreement with the defendant - with each one of those witnesses where they are supposed to tell the truth.

J.A. 505-06. As conceded at oral argument, it is not this entire soliloquy which is arguably inappropriate. The allegedly improper statement is the first sentence of the second paragraph, where the

---

[1]In his supplemental brief, and again at oral argument, Collins sought to preserve the issue of the unconstitutionality of his sentence "in the event that the Supreme Court issues a favorable decision[ ]" in *United States v. Booker*, 125 S. Ct. 738 (2005). Subsequent to oral argument, the Court issued its opinion in *Booker* holding that the Sentencing Guidelines, which are mandatory and binding on all judges, are unconstitutional. *Id.* Because we conclude that, for two other reasons, this case must be remanded, this is the only argument which we do not address.

prosecutor stated that the "government is always seeking to determine whether [a cooperator is] telling the truth[.]"

The question then presented is first, whether this statement constitutes improper vouching for the credibility of a witness and, if so, whether those "remarks or conduct prejudicially affected [the Defendant's] substantial rights so as to deprive him of a fair trial." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002).

Collins argues, and the Government agrees, that "[i]t is impermissible for a prosecutor to indicate her personal belief in the credibility of Government witnesses or to elicit one witness' opinion that another witness has told the truth." *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003) (citing *United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993)); *see also Berger v. United States*, 295 U.S. 78, 88 (1935). The disagreement between Collins and the Government arises from each party's interpretation of the aforementioned excerpt from the prosecutor's rebuttal closing argument. Collins contends that the statement suggests to the jury that "the Government official was checking to see whether the witnesses were telling the truth in accordance with their plea agreements." Appellant's Brief at 19. The Government disputes this interpretation, arguing that the prosecutor was merely focusing the jury's attention on the terms of the plea agreement. Appellee's Brief at 23-24. The district court, during the trial, agreed with the Government's interpretation, explaining to the parties that "[i]t's fair game for both sides to address [the credibility of the witnesses]. What [the prosecutor] was doing, I think, was focusing to raise attention on the plea agreement. . . . And that's perfectly appropriate." J.A. 508.

As could be expected considering the ubiquitous nature of cooperating witnesses in criminal trials, the issue of a prosecutor referring to plea agreements at trial has been considered by most circuits. A Tenth Circuit opinion very effectively delineated what comments are appropriate and what comments are improper, explaining that

> [p]resenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. . . . Use of the

'truthfulness' portions of [a plea agreement] becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.

*United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990) (citations omitted). Other circuits are in agreement with the Tenth. For example, the Ninth Circuit cautioned that "[t]he prosecution may not portray itself as a guarantor of truthfulness." *United States v. Roberts*, 618 F.2d 530, 537 (9th Cir. 1980). Nor may the Government "give jurors the impression that the prosecutor is carefully monitoring the testimony of the cooperating witness to make sure that the latter is not stretching the facts[.]" *Id.* at 536 (quoting *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1150 (2d Cir. 1978) (Friendly, J. concurring)).

The relevant case from this Circuit is *United States v. Henderson*, 717 F.2d 135 (4th Cir. 1983) *cert. denied* 465 U.S. 1009 (1984). After canvassing the views of other circuits, this Court adhered to the views of the Seventh Circuit, expressed in *United States v. Hedman*, 630 F.2d 1184, 1198-99 (7th Cir. 1980) and *United States v. Craig*, 573 513, 519 (7th Cir. 1978) *cert. denied* 439 U.S. 820 (1978), and found no improprieties in "permitting the government to introduce the terms of [the cooperator's] plea bargain during the government's case in chief." *Henderson*, 717 F.2d at 138. *Henderson*, however, is not directly on point because the statement made in the current controversy was part of the prosecutor's rebuttal closing argument, rather than during the Government's case in chief. The Government argues, in effect, that there is no distinction between the two methods of referring to the plea agreements. *See* Appellee's Brief at 24. We disagree.

By its own language, *Henderson* differentiates the current situation from the introduction of the terms of a plea agreement on direct or re-direct examination. In explaining why the Government did not improperly draw attention to the plea agreement, this Court found relevant the fact that "Henderson ma[de] no claim that the prosecutor made improper use of the plea bargain promise of truthfulness in closing argument." *Henderson*, 717 F.2d at 138. Thus, potentially prejudicial statements made during closing arguments require closer scrutiny

than the eliciting of information about the plea agreement during the prosecutor's case in chief.

This distinction is an important one because the potential for impermissible vouching is greater during an attorney's soliloquy to the jury than during an attorney's interaction with a witness. In the former posture the attorney has greater leeway to develop her own thoughts and convey those concepts to the jury. Therefore, we do not find *Henderson* to be directly on point. Rather, applying the rationale of *Bowie*, *Roberts* and *Arroyo-Angulo*, we find the prosecutor's argument in this case, at a stage when there is a heightened concern about impermissible vouching, either crossed the line, or, at best, was a close call.

However, regardless of the side of the line on which this statement falls, we conclude that it did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Scheetz*, 293 F.3d at 185 (citing *United States v. Morsley*, 64 F.3d 907, 913 (4th Cir. 1995)). Even if we were to find that the prosecutor's statement implied that the government could insure the credibility of the witness, "[s]uch impermissible vouching is not necessarily reversible error." *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003). Rather, a court makes a reversible error determination on the basis of four factors: "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) (citing *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993); *United States v. Adam*, 70 F.3d 776, 780 (4th Cir. 1995)).

First, it is unlikely, considering the overall context in which the statement was made, that the prosecutor's statement misled the jury. As this Court found relevant in *Henderson*, "[t]he trial judge instructed the jury on the caution necessary in evaluating testimony given pursuant to a plea bargain." *Henderson*, 717 F.2d at 138. A curative instruction, as indicated in *Henderson*, prevents the misleading of the jury. An instruction similar to the one given in *Henderson* was given to the jury in this case after the allegedly improper statement, thus effectively sanitizing any potential vouching concern. *See*

Transcript of Closing Argument at 434-39 (The relevant instructions given to the jury were as follows: "You are the sole judges of the credibility of each of the witnesses called to testify. . . . [T]here has been testimony from several government witnesses who plead guilty after entering into an agreement with the government to testify. . . . You in turn may accept the testimony of such a witness . . . however, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. . . . [T]he testimony of a witness who has been promised that the witness will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize such testimony closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests[.]"). These instructions, coming immediately following the allegedly improper vouching by the prosecutor, clearly eliminated any prejudice to Collins. Thus, the first *Sanchez* factor must be resolved in favor of the Government.

The second *Sanchez* factor strongly militates against a finding of reversible error. As distilled at oral argument, the problematic statement was actually only one clause of a sentence in the middle of the rebuttal closing argument. As noted above, not only was the statement sufficiently sanitized by the district court's subsequent jury instruction, it was also an isolated, rather than pervasive or extensive, comment.

With regard to the third *Sanchez* factor, Collins asserts that the Government's case was centered around the cooperating witnesses who signed plea agreements. Appellant's Brief at 21; *see also* J.A. 81, 347 (listing the witnesses, eight of whom signed plea agreements with the Government or were promised immunity). Therefore, Collins argues, this factor weighs in favor of a finding of prosecutorial misconduct because the jury's verdict was primarily based on a credibility determination of those witnesses, allegedly buttressed by the improper statement in the Government's rebuttal closing argument. Collins is correct that much of the evidence presented was the testimony of cooperating witnesses. *See* Appellant's Brief at 4 ("[T]he Government relied entirely upon historical information from cooperating witnesses[.]"). The Court also agrees with Collins that if vouching did occur, then it improperly buttressed the credibility of all

cooperating witnesses. Considering the Government's reliance on testimony from numerous cooperating witnesses, it is clear that if those witnesses were not deemed credible by the jury, then the Government's case would have been weaker. Accordingly, this factor, as Collins contends, does weigh towards a finding of reversible error.

Finally, the fourth *Sanchez* factor militates against a finding of reversible error. Nothing in the record suggests that the comments were "deliberately made to divert the jury's attention," and the Defendant does not so contend.

Considering all the factors enunciated in *Sanchez*, even accepting Collins' argument that the third factor weighs towards a finding of prosecutorial misconduct, we conclude that it is outweighed by the other three factors, leading to the conclusion that there was no reversible error.

*Late Disclosure of* Brady *Evidence*

Collins' next argument for a reversal of the conviction is an alleged violation of the *Brady* doctrine. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court later "held that the duty to disclose such evidence is applicable even though there has been no request by the accused[.]" *Strickler v. Greene*, 527 U.S. 263, 280 (1999)(citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Collins moved to dismiss the charges against him, arguing that the Government had disclosed the identities of nontestifying confidential informants only a few days prior to commencement of the trial, even though he requested this information a month before the trial. As a result, Collins could locate only two of the six confidential sources, and he contends that this "falls within the ambit of *Brady*." Appellant's Brief at 23. For two reasons, we cannot agree.

First, "evidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516

U.S. 1, 5 (1995) (citing *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). Considering the record, no such reasonable probability exists in this case. There is nothing to support Collins' assertion that these informants would have produced exculpatory information. Indeed, from a reading of the record, his counsel's assertions could be interpreted to suggest that these informants would not produce evidence favorable to him. *See* J.A. at 72-74 (defense counsel proffering that "these witnesses do not mention Mr. Collins. . . . [T]hese are witnesses that came forward and provided information to the police that never mentioned my client. They described who was involved in the conspiracy."). In short, we agree with the district court that "[t]here are probably hundreds of people who could" testify that they purchased drugs from an individual other than Collins. *Id*. Second, we agree with the district court that "a motion to dismiss is not the proper vehicle [for a late *Brady* disclosure]. At best, a motion to get more time to talk to these people." *Id*. at 71. No such motion was made. Collins' motion sought dismissal of the charges, and, when his motion was denied, he did not seek a continuance.

*Unconstitutionality of 21 U.S.C. § 841*

Collins argues that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the penalty provisions of 21 U.S.C. § 841[2] are unconstitutional and, because they cannot be severed from the remainder of the statute, the entire statute is facially invalid. This argument is foreclosed by *United States v. McAllister*, 272 F.3d 228 (4th Cir. 2001), where this Court unambiguously concluded that "*Apprendi* does not render § 841 facially unconstitutional[.]" *Id*. at 234. "A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993). Therefore, Collins cannot succeed on his claim that 21 U.S.C. § 841 is unconstitutional.

---

[2] 21 U.S.C. § 841(b) prescribes the penalties for manufacturing, distributing, or dispensing controlled substances; or possessing controlled substances with the intent to engage in the above activities. This subsection determines the length of incarceration for a violation by considering both the type of controlled substance and the weight of the substance.

*Jury Charge Regarding Drug Quantity*

During its deliberations, the jury submitted several questions to the district court. One read as follows: "Under Count 1, does the amount of drug apply to Ron Collins alone or the entire group of conspirators?" J.A. 527. The court answered the question as follows: "The amount of drugs applies to the entire group of conspirators. In other words, it's a conspiracy to distribute 50 grams or more of crack cocaine. That's what the charge is. So the amount applies to the conspiracy, to the group." J.A. 533.

Collins argues that the district court erred in answering the jury's question. Collins contends that the jury should have been instructed that in order to hold Collins responsible for 50 grams or more of crack cocaine it must make one of two findings, either that (1) Collins himself was involved in the distribution of 50 grams of crack cocaine, or (2) other members of the conspiracy were involved in that amount, and those actions of coconspirators were both reasonably foreseeable and in furtherance of the jointly undertaken criminal activity, *see Pinkerton v. United States*, 328 U.S. 640 (1946).

The Superseding Indictment charged Collins with two counts: Count 1, a violation of 21 U.S.C. § 846 (conspiracy to distribute a controlled substance), and Count 2, a violation of 21 U.S.C. § 856(a)(2) (maintaining a crack house). J.A. 15-17 Collins' appeal concerning the district court's allegedly erroneous answer to the jury's question implicates only Count 1.

Section 846 of Title 21 is a conspiracy statute. It provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Count 1 of the Superseding Indictment charged Collins with conspiracy to violate § 841(a)(1), which makes it a crime to intentionally "manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Section 841(b) establishes the penalties applicable to individuals who violate § 841(a). Not surprisingly, the greater the quantity of drugs involved, the harsher the penalty.

The most stringent penalty section under § 841(b), § 841(b)(1)(A), mandates a 10 year minimum sentence for an individual found guilty under § 841(a) for manufacturing, distributing, or dispensing (or possessing with the intent to engage in those activities) 50 grams or more of cocaine base. The Superseding Indictment contemplates this subsection by charging Collins with conspiring to distribute *50 or more grams* of cocaine base, commonly known as crack cocaine. J.A. 15.

Considering the statutory scheme outlined above, it is clear that the amount of narcotics attributable to a defendant dictates the period of incarceration for a defendant convicted of the substantive offense. When a defendant is charged and convicted for *conspiracy* to violate § 841(a), the important question of quantity becomes more difficult to interpret and apply. Should an individual defendant, found guilty of conspiracy to violate § 841(a), be sentenced under § 841(b) by considering the amount of narcotics distributed by the *entire conspiracy*? Or should that defendant's sentence be more individualized, subjecting him to punishment only for distribution of the amount of narcotics *attributable to him*? In *United States v. Irvin*, 2 F.3d 72 (4th Cir. 1993) we answered these questions.

In *Irvin*, the Government argued that

> in a narcotics conspiracy comprised of different individuals and multiple criminal acts, a district court must determine the applicable sentence by ascertaining the quantity of narcotics involved in each object of the offense of the conspiracy, aggregate these amounts, and then assign to each coconspirator the mandatory minimum sentence of § 841(b) corresponding to the aggregated quantity of narcotics.

*Id*. at 76. Although we observed that this was a plausible interpretation of § 841(b) and § 846, we noted that "[u]nder another logical reading of the statutory language, the sentencing provisions applicable to conspiracies involving multiple narcotics should be individualized to reflect a particular coconspirator's relative culpability in the conspiracy." *Id*.[3] We then unambiguously rejected the Government's

---

[3] *Irvin* considered the issue of individualized culpability in the context of both narcotic type and quantity. In this case, the Superseding Indictment charged Collins only with conspiracy to distribute one type of controlled substance: cocaine base. Thus, the only required individualized determination is quantity.

interpretation, concluding that "the most reasonable interpretation of
the relevant statutory provisions requires a sentencing court to assess
the quantity of narcotics attributable to each coconspirator by relying
on the principles set forth in *Pinkerton*." *Id.* at 77 (citing *United States
v. Martinez*, 987 F.2d 920, 925 (2d Cir. 1993); *United States v. Bush*,
813 F. Supp. 1175, 1180 (E.D. Va. 1993)).

Having established the governing principles, we now turn to the
facts of this case. Once again two questions must be answered. First,
did the district court err in its answer to the jury's question? Second,
if the district court erred, what is the appropriate remedy? We con-
clude that the district court did err. The error, however, was not the
court's answer to the question, but the failure to give a supplemental
instruction which is necessary to determine the penalty subsection in
§ 841(b) applicable to Collins.

Collins argues that the district court's answer to the question was

> in contravention of the requirement that a defendant is only
> responsible for drug activity by other conspirators that was
> both within the scope of his agreement (*i.e.*, a part of his
> jointly undertaken activity) *and* reasonably foreseeable to
> him. Thus, the jury's determination that Mr. Collins was
> responsible for the drug quantity threshold of 50 grams or
> more of crack cocaine must be set aside.

Appellant's Brief at 37. Stated differently, Appellant argues that the
district court, when answering the jury's question, should have given
a *Pinkerton* instruction.

The principles outlined in *Pinkerton*, however, have no applicabil-
ity to a conviction under § 846. *Pinkerton* principles are relevant
when a conspirator is charged with a substantive offense arising from
the actions of a coconspirator, not when a conspirator is charged with
conspiracy.[4] Because Count 1 charges Collins with conspiracy

---

[4]For example, in *Pinkerton*, brothers Daniel and Walter Pinkerton were
charged with both substantive violations of the Internal Revenue Code
and conspiracy to violate those provisions. There was no evidence to

(§ 846), and not a substantive offense, the district court's answer to the jury's question, as well as its original conspiracy instruction, *see* Trans. at 444, is unassailable as a matter of law. *See e.g.*, *United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998). This, however, does not end the inquiry.

Although the district court correctly instructed the jury as to the elements of conspiracy, it erred by not issuing a further instruction relating to the factual predicate necessary for sentencing. As previously outlined, § 841(b) has various subsections that prescribe gradations of minimum and maximum sentences dependent on the quantity of narcotics involved in the violation. Following *Irvin*, the subsection of § 841(b) applicable to an individual defendant is determined by a consideration of the amount of narcotics attributable to that defendant. *Irvin* was decided, however, prior to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001).[5]

At the time *Irvin* was decided, it was the district court that determined, under a preponderance of the evidence standard, the quantity of narcotics attributable to a defendant for purposes of setting the spe-

---

show that Daniel had committed the substantive offense. Nevertheless, his conviction on those offenses was upheld because there was ample proof that Walter, his coconspirator, had committed those offenses during and in furtherance of the unlawful conspiracy. The Court explained that "so long as the partnership in crime continues, the partners act for each other in carrying it forward." *Pinkerton*, 328 U.S. at 646.

[5]In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) the Court announced that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Applying this holding to cases involving § 841, we explained that the jury, rather than the district court, must determine the quantity of narcotics. *See Promise*, 255 F.3d at 156 ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt.").

cific threshold drug quantity under § 841(b). *See Irvin*, 2 F.3d at 76 ("[T]he statutes require a district court to determine the accountability of each coconspirator for each object offense and the quantity of narcotics involved in each object offense using the principles of *Pinkerton*."). *Apprendi* and *Promise* altered *Irvin*'s holding by effectively replacing the words "a district court" with "the jury," and requiring proof beyond a reasonable doubt. Although *Apprendi* modified *Irvin* in this manner, *Irvin*'s holding that *Pinkerton* principles should be used to determine, for sentencing purposes, the amount of narcotics attributable to any one individual in a conspiracy, remains good law. Under current precedent, rather than the district court applying *Pinkerton* principles when determining the appropriate sentence under § 841(b), that same court must instead instruct a jury to use *Pinkerton* principles when making the same determination. This is what the district court failed to do.

By failing to instruct the jury in a manner consistent with our holding in *Irvin* (*i.e.* that, for purposes of setting a specific threshold drug quantity under § 841(b), the jury must determine what amount of cocaine base was attributable to Collins using *Pinkerton* principles), the district court's sentence effectively attributed to Collins, an individual member of the conspiracy, the quantity of cocaine base distributed by the entire conspiracy. Because the district court adopted the jury's drug quantity determination in its application of the sentencing guidelines, the error affected both the threshold statutory range under § 841(b) and the district court's application of the guidelines. For these reasons, the district court's *sentence*, which was based on the 10 year minimum set forth in § 841(b)(1)(A), cannot stand.

Having determined that the district court's failure to issue appropriate jury instructions concerning the facts necessary to determine Collins' sentence, we turn to the more difficult question of fashioning the appropriate remedy. As we have already made clear, Collins' conviction under § 846 is sound. The jury unanimously found Collins to be guilty of a conspiracy to distribute crack cocaine (*i.e.* a conspiracy to violate § 841(a)). *See* Paper No. 54 (Verdict Sheet, question 1). Guilt of the substantive offense defined in § 841(a) is not dependent upon a determination of the amount or type of narcotics distributed. Therefore, the error below concerns not § 841(a), but the penalty provisions in § 841(b).

Because the conviction of conspiracy to violate § 841(a) is sound, remanding for a new trial is not the appropriate remedy. It is also clear that remanding the case for resentencing, and permitting the district court to determine the quantity of cocaine base for § 841(b) purposes, would be inconsistent with the Sixth Amendment. *See Apprendi*, 530 U.S. at 490. A previous case from this circuit provides some guidance concerning the appropriate remedy.

In *United States v. Rhynes*, 206 F.3d 349 (4th Cir. 1999), *rev'd on other grounds* 218 F.3d 310 (4th Cir. 2000) (en banc), we considered a case where a district court sentenced defendants after the jury returned a verdict of guilty on an indictment charging the defendants with a multi-drug conspiracy (heroin, cocaine, cocaine base, and marijuana), without specifying which drug was the object of the conspiracy. Three of the defendants received a sentence exceeding the statutory maximum for conspiracy to distribute marijuana, the controlled substance with the least stringent statutory sentencing range. *Id.* at 237-40. We found that this sentence was impermissible, relying on *Edwards v. United States*, 523 U.S. 511 (1998) and *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975), because the district court could not determine which controlled substance the jury found to be the object of the conspiracy. *Rhynes*, 206 F.3d at 381. Because no special verdict was requested by the Government, *Quicksey* and *Edwards* dictated that the sentences be set aside. *Id.* at 378-81.

In fashioning a remedy in *Rhynes* we looked to *Quicksey*, the case which compelled our *Rhynes* conclusion. *See id.* at 381. Following *Quicksey*, the remedy adopted in *Rhynes* was to "withhold judgment as to the sentences of [three defendants] under Count I, giving the Government the choice between resentencing these defendants consistent with a marijuana conspiracy conviction, or retrying them on Count I." *Id.* "If the Government chooses to resentence these defendants, we will affirm the convictions and remand for resentencing. If the Government does not so choose, we will vacate the sentences and remand for a new trial on Count I." *Id.* Although this remedy was ultimately voided by a later en banc decision remanding the case for a new trial, the panel's proposed resolution provides helpful guidance in fashioning the appropriate remedy in this case.

We will withhold judgment as to the conspiracy count for thirty days. The Government may elect to request that we affirm the con-

spiracy conviction and remand for Collins to be resentenced under the default penalty provision in § 841 that applies when the amount of crack cocaine attributable to a defendant is less than 5 grams, 21 U.S.C. § 841(b)(1)(C) (providing for a range of zero to 20 years imprisonment), or the Government can request that we reverse Collins's conspiracy conviction and remand for a new trial.

*Cross-Appeal by the Government — Criminal History Category of Defendant*

At the sentencing portion of the trial, the district court determined that Collins' criminal history should be Category I rather than Category III. J.A. 575. The Government argues that the district court's sentencing determination was in error. This court reviews "a district court's interpretation of the applicable sentencing guidelines *de novo* and its factual findings for clear error." *United States v. Quinn*, 359 F.3d 666, 679 (4th Cir. 2004) (citing *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989)).

The dispute regarding Collins' criminal history stems from his prior DWI convictions in 1988, 1989, and 1990. When this case reached the sentencing stage, the Government argued that Collins should be assigned a criminal history of Category III. *See generally* U.S. SENTENCING GUIDELINES MANUAL § 4A1.1 (2003). Collins, in rebuttal, contended that the district judge should place him in Category I because "there is no information concerning whether Mr. Collins had attorney representation for these offenses. Nor, is there any information reflecting whether Mr. Collins received any jail time for the offenses." J.A. 546. Additionally, Collins' counsel asserted that, "[d]ue to the age of the offense, Mr. Collins also does not recall whether he in fact had counsel or went to jail." *Id.*

Under *Burgett v. Texas*, 389 U.S. 109, 115 (1967), a conviction achieved in violation of the Sixth Amendment right to counsel cannot "be used against a person either to support guilt or enhance punishment for another offense[.]" In this case, it is difficult not to view with skepticism the contention that Collins simply "did not recall" whether he was represented by an attorney at his prior convictions. From the record, it appears that defense counsel's proffer did, however, factor into the district court's sentencing determination:

> Given the nature of those [DWI] offenses, while driving
> while intoxicated is a serious offense, it's certainly not the
> same thing as dealing drugs or burglary or serious types of
> felonies, and it strikes the Court that while the government
> is arguing that the court draw an inference of regularity, the
> criminal law also talks about the rule of lenity, and I think
> that this criminal history is not sufficiently reliable for the
> Court to impose a level III on this defendant.

J.A. 575. This conclusion was reached even though Collins offered no
evidence that the prior convictions were not constitutionally sound.[6]

The underlying issue, as we see it, is effectively a question of bur-
den shifting. When a prior conviction is used to assess the applicable
criminal history category of a defendant, pursuant to sections 4A1.1
and 4A1.2 of the Sentencing Guidelines, should the burden fall on the
government to show that there was no constitutional defect regarding
that prior conviction, or should the burden fall on the Defendant to at
least raise an inference of the invalidity of the prior conviction? We
believe that the burden should fall on the Defendant.

We arrive at this conclusion by following Supreme Court precedent
which states that "even when a collateral attack on a final conviction
rests on constitutional grounds, the presumption of regularity that
attaches to final judgments makes it appropriate to assign a proof bur-
den to the defendant." *Parke v. Raley*, 506 U.S. 20, 31 (1992) (citing
*Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938)). Although *Parke*
dealt with a Kentucky procedure that permitted a defendant to chal-
lenge prior convictions before being sentenced under a recidivism
statute, *see Parke*, 506 U.S. at 22-23, its discussion of the presump-
tion of regularity of prior convictions remains applicable. *Cf. United
States v. Gray*, 177 F.3d 86, 91 (1st Cir. 1999)(citing cases which
suggest that "[a]lthough *Parke* was a habeas case and not a sentencing

---

[6]For an example of an instance where a defendant did submit sufficient
evidence to defeat the presumption that a prior conviction was constitu-
tionally sound, see *Burgett*, 389 U.S. at 114-15 ("In this case the certified
records of the Tennessee conviction on their face raise a presumption
that petitioner was denied his right to counsel in the Tennessee proceed-
ing, and therefore his conviction was void.").

case, for these purposes this is a distinction without a difference."). Indeed, material aspects of *Parke* make it more, not less analogous to the facts of this case. For example, neither *Parke* nor this case was "a case in which an extant transcript is suspiciously 'silent' on the question whether the defendant waived constitutional rights." *Parke*, 506 U.S. at 30. Rather, in both cases "no transcripts or other records of the earlier plea colloquies exist at all." *Id*. Therefore, we find *Parke* to be controlling.

The First Circuit also found *Parke* to dictate the same outcome. *Gray*, 177 F.3d 86. *Gray* determined that the rationale from *Parke* forecloses a defendant's argument that the burden of proving a constitutionally sound conviction from a silent record "shift[s] back to the government." *Id*. at 90 (citing *Parke*, 506 U.S. at 20). The First Circuit in *Gray* also rejected the defendant's burden shifting argument for the practical reason that "a defendant stands in the best position to offer a first-hand account of the details of his own past legal proceedings[ ] [and] his silence can be deafening." *Id*. We find ourselves in complete agreement with our sister circuit's application of the presumption of regularity in these circumstances.

During sentencing, the district court stated that the "criminal history is not sufficiently reliable for the Court to impose a level III on this defendant[,]" so it was "going to make an adjustment to the criminal history." J.A. 575. It was not clear, however, whether the district court, when making its sentencing determination, granted a downward departure pursuant to § 4A.1.3 of the Sentencing Guidelines or whether the district court refused to apply the presumption of regularity. Assuming that the district court's decision was based on the failure to apply the presumption, or the balancing of the presumption with the rule of lenity,[7] we conclude that such a decision was improper as a matter of law.

---

[7]The district court referenced the rule of lenity during the sentencing hearing. The rule of lenity is invoked when a criminal statute is ambiguous. It has the effect of directing a court to interpret an ambiguous criminal statute in such a way that results in a more lenient punishment for the defendant. *See Black's Law Dictionary* (7th ed.) ("The rule of lenity is a judicial doctrine holding that a court, in construing an ambiguous criminal statute that sets out multiple or inconsistent punishments, should

## CONCLUSION

In sum, we conclude that the district court's sentence was erroneous for two reasons. First, the district court's failure to issue instructions conveying the principles enumerated in *Pinkerton* prevented the jury from making a factual finding which would serve as the necessary predicate for the district court's sentence. Second, the district court did not properly take into account Collins' criminal history. Thus, we affirm Collins's conviction for maintaining and controlling a room or enclosure for the purpose of unlawfully storing, distributing, and using a controlled substance in violation of 21 U.S.C. § 856(a)(2) and remand for resentencing in a manner consistent with this opinion and with "the remedial scheme adopted by the Court in *Booker*[.]" *United States v. Robinson*, 404 F.3d 850, 861 (4th Cir. 2005). We will withhold judgment on the validity of Collins's conspiracy conviction for thirty days, during which time the government can request either that we affirm the conviction and remand for resentencing under 21 U.S.C. § 841(b)(1)(C) or that we reverse the conviction and remand for a new trial.

*AFFIRMED AND REMANDED IN PART AND*
*JUDGMENT WITHHELD IN PART*

---

resolve the ambiguity in favor of the more lenient punishment."); *United States v. Wildes*, 120 F.3d 468, 471 (4th Cir. 1997) ("Application of the rule of lenity is appropriate only when there remains 'a grievous ambiguity' in the language of the statute after a court has used every method of statutory construction to resolve it." (citing *Chapman v. United States*, 500 U.S. 453, 463 (1991)). In this case there was no ambiguity as to the sentencing guidelines or a criminal statute. Therefore, the invocation of the rule of lenity in these circumstances is not appropriate, and certainly should not outweigh the presumption of regularity.