UNITED STATES of America,
Appellee,

v.

Franklin S. CARROLL, Appellant.

No. CRIM 05–0319RWT.

United States District Court,
D. Maryland,
Southern Division.

Nov. 2, 2005.

Jennifer Kramme, Megan E. Middleton, Special Assistant U.S. Attorney, Department of the Airforce, Andrews Air Force Base, MD, for Appellee.

Richard A. Finci, Houlon Berman Bergman Cerullo Finci and Levenstein LLC, Greenbelt, MD, for Appellant.

## *MEMORANDUM OPINION*

TITUS, District Judge.

On May 16, 2005, Appellant Franklin S. Carroll was found guilty after a bench trial of illegal possession of cocaine, crack cocaine, and oxycontin under 21 U.S.C. § 844 and of consuming an alcoholic beverage in the passenger compartment of a motor vehicle on a highway in violation of Md. Transp. Code § 21–903. On June 28, 2005, Appellant was sentenced to eight months of incarceration, a $9,000 fine for the drug charges, a $500 fine for the open container charge, a special assessment of $85, and supervised release for one year. Appellant now appeals his conviction on Fourth Amendment grounds and his sentence as having been erroneously calculated under the United States Sentencing Guidelines. For the reasons that follow, this Court affirms the decision of the magistrate judge as to the conviction but vacates the sentencing, and consequently remands the case to the magistrate judge for resentencing in a manner consistent with this opinion.

## BACKGROUND

On January 6, 2005, Appellant attempted to enter Andrews Air Force Base by driving his pickup truck through its main gate; he was routinely stopped by U.S. Air Force Security Forces Officer Staff Sergeant Ronald Bond. Tr. I at 32. While SSgt. Bond was checking Appellant's identification, he noticed that Appellant had an open container of Budweiser beer, in violation of Maryland law, so he asked Appellant to turn off his engine and turn over his identification card and keys. Tr. I at 33. When a second security officer, SSgt. Robert Taylor, arrived (at SSgt. Bond's

request), SSgt. Taylor performed field sobriety tests, which Appellant passed. Tr. I at 9, 19. SSgt. Taylor then began to explain that he could not proceed onto the base with an open container of alcohol. Appellant volunteered that he had other alcohol in a cooler inside his vehicle and that SSgts. Taylor and Bond were "more than welcome to look through his vehicle for anything that [they] chose to ensure that there was nothing illegal." Tr. I at 9.

During the search, SSgt. Bond found a purple Crown Royal bag behind the driver's seat. Tr. I at 11, 35. Inside the bag were nineteen plastic baggies containing what turned out to be oxycontin, crack cocaine, and powder cocaine. Tr. I at 11, 35. Appellant was arrested and charged with three counts of possession of an illegal substance (one per illegal substance found), plus the open container charge.

On May 16, 2005, the magistrate judge held a hearing on Appellant's motion to suppress the evidence found in the Crown Royal bag. Appellant argued that he had been unlawfully detained, that he was coerced by the confiscation of his keys and license (which prevented him from being free to leave), and that the officers' search of the Crown Royal bag exceeded the scope of the search to which he had consented. The magistrate judge held that (1) the detention was legal, (2) it did not become illegal just because it extended for a few minutes beyond when Appellant passed the sobriety tests, (3) the consent was not coerced, and (4) the consent extended to a complete search of the vehicle, including the Crown Royal bag. Thus, the motion to suppress was denied. Tr. I at 67–71. The magistrate judge conducted a bench trial the same day and convicted the Appellant on all four counts. Appellee's Br. at 4.

On June 28, 2005, the magistrate judge conducted a sentencing hearing. During the hearing, Appellant's counsel argued extensively about the application of the grouping provision of the U.S. Sentencing Guidelines, § 3D1.2. If § 3D1.2 permitted the three drug counts to be grouped for sentencing purposes, then the Guidelines offense level would be 8 and the sentencing range would be 0–6 months; without grouping, the offense level would be 11 and the sentencing range would be 8–14 months. The magistrate judge never made an explicit finding as to the applicable guidelines range, instead stating that "this all may be a wonderful academic exercise" but that "[t]he gist of it ... has been this is a conviction dealing with the possession of a Class A misdemeanor-type drug," so the "sentencing is really going to be shaped by a one-year period of active incarceration from the get-go." Tr. II at 13. After further discussion about Appellant's history and situation, the magistrate judge ultimately imposed a sentence of eight months of prison time (in addition to fines, a mandatory special assessment, and one year of supervised release).

## DISCUSSION

A federal magistrate judge's judgment of conviction and sentence may only be appealed to a federal district court. 18 U.S.C. § 3402. Under Federal Rule of Criminal Procedure 58(g)(2)(D), "[t]he scope of the appeal [from a magistrate judge's judgment] is the same as in an appeal to the court of appeals from a judgment entered by a district court." Thus, this Court reviews the magistrate's denial of a motion to suppress for clear error as to factual findings and de novo as to legal determinations. *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir.1992). This Court reviews a magistrate's interpretation of the Sentencing Guidelines de novo, *see United States v. Collins*, 415 F.3d 304, 315 (4th Cir.2005), except when

such interpretation was not objected to before the magistrate judge, in which case the Court applies the more stringent plain error standard, *see United States v. Hughes*, 401 F.3d 540, 547 (4th Cir.2005). The Court considers each of Appellant's arguments in turn.

*Denial of Appellant's Motion to Suppress*

■ Appellant first argues that his consent was not voluntary because he was "effectively detained, never afforded the opportunity to terminate the encounter and proceed onto the base, nor advised of his right to deny the request for consent." Appellant's Br. at 5. However, as Appellant concedes, whether he was detained, and whether that detention was legal, is not dispositive of whether his consent was voluntary. *See United States v. Boone*, 245 F.3d 352, 363 (4th Cir.2001). Rather, the inquiry is whether, under the totality of the circumstances, a defendant was coerced, or whether his "will was overborne." *Id.*

■ Applying that standard, the magistrate judge's conclusion that Appellant's consent was voluntary was not clearly erroneous. The magistrate judge held that the period during which Appellant was detained after he had passed the field sobriety tests was not unlawfully long. Tr. I at 68. He further found that Appellant specifically gave permission to examine his vehicle, even after a clarifying question by SSgt. Taylor. Tr. I at 69. He found that the only possible source of coercion—"keeping the defendant's keys and/or license until all the paperwork and processing had been completed"—was not coercive. *Id.* Indeed, there was testimony, which the magistrate judge was free to find credible, that Appellant's consent was volunteered without any prompting at all, and that Appellant told SSgt. Taylor that he was "more than welcome to look through his vehicle for anything that [he]

chose to ensure that there was nothing illegal" after SSgt. Taylor began to explain that he could not drive onto the base with an open container. Under the circumstances, this Court sees no reason to dispute the magistrate's finding of voluntariness, much less to overturn it on clear error review.

■ Appellant's second argument as to the suppression motion is that the scope of the consent did not extend to the Crown Royal bag containing the drugs. Here again, this determination is factual, and this Court reviews the magistrate's findings for clear error. And here again, this Court finds them not clearly erroneous. The magistrate judge noted that SSgt. Taylor specifically asked for clarification about whether he could "examine [Appellant's] vehicle." Tr. I at 69. The magistrate judge also noted that although Appellant testified on direct examination that he had specifically limited the scope of his consent to the cooler, his testimony on cross-examination was subtly inconsistent with this: on cross-examination, Appellant "said he did not specify where they were to look," but "only thought that they were looking for an open container." Tr. I at 70. Based on this inconsistency and the officers' consistent testimony that the scope of the consented-to search was not limited, the magistrate judge made a credibility determination that Appellant's statements to the officers did not include any limitation. Tr. I at 70–71. This finding was supported by the testimony on both sides and was not clearly erroneous, and the conclusion that the search of the Crown Royal bag was consented-to stands with it.

Thus, the denial of the motion to suppress must be affirmed.

*Appellant's Sentence*

Appellant also challenges the sentence imposed by the magistrate judge, and in

particular the failure of the magistrate judge to apply correctly the grouping provision in § 3D1.2 of the U.S. Sentencing Guidelines to Appellant's three counts of unlawful possession of a controlled substance.

As a preliminary matter, the government argues that at least as to the oxycontin, Appellant waived this argument by not presenting it to the sentencing judge, and that review by this Court should only be for plain error. Appellee's Br. at 6; *see Hughes*, 401 F.3d at 547. However, Appellant's counsel did make precisely the same arguments about grouping before the magistrate judge, if not at the time the government cites: his counsel argued explicitly that "this act of possession within this Crown Royal bag is one act, [and] that it's grouped together as one act even if there were three separate drugs found in the one bag." Tr. II at 11. The argument is therefore not waived, and de novo review is appropriate. *Collins*, 415 F.3d at 315.

Under the Fourth Circuit's post-*Booker*[1] case law, a sentencing court "shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *Hughes*, 401 F.3d at 546. Then, "the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* Moreover, "[i]f the court imposes a sentence outside the guideline range, it should explain its reasons for doing so." *Id.* In the instant case, the magistrate judge did not state what guidelines range he was applying and did not state any reasons for departing from a guidelines sentence. He did, however, acknowledge that without grouping, the guidelines range was 8–14 months, whereas with grouping, it was no more than six months. Tr. II at 14. Because he ultimately imposed a sentence of eight months, this Court presumes that the magistrate judge intended to impose a guidelines sentence, implicitly concluded that grouping was inappropriate and that the appropriate range was 8–14 months, and after considering the relevant factors imposed a sentence at the bottom of the guidelines range. The question presently before this Court is therefore whether the magistrate judge correctly treated the three drug counts as separate under Sentencing Guidelines § 3D1.2, or whether the counts should have been grouped.

Section 3D1.2 provides:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

. . .

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Offenses covered by the following guidelines are to be grouped under this subsection:

. . .

Specifically excluded from the operation of this subsection are:

. . .

§ 2D2.1, 2D2.2, 2D2.3;

. . .

---

1. *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

U.S. Sentencing Guidelines Manual § 3D1.2 (2004). The three counts of unlawful possession of a controlled substance were violations of 21 U.S.C. § 844, an offense which is covered by Sentencing Guidelines § 2D2.1. Section 3D1.2(d) provides that § 2D2.1 is "[s]pecifically excluded from the operation of this subsection." The question is the scope of the exclusion that employs the term "this subsection." Does the exclusion refer to § 3D1.2 as a whole, or to § 3D1.2(d) only?

Appellant's Presentence Report, upon which the magistrate judge apparently relied, states that "U.S.S.G. § 3D1.2—*Groups of Closely Related Counts* instructs the Court that all counts covered by U.S.S.G. § 2D2.1 are not to be grouped." This statement, however, is not correct. By its terms, the exclusion applies only to "this subsection," and "this subsection" is not all of § 3D1.2—an entire section, not a subsection—but rather § 3D1.2(d) alone. *See United States v. Lenoci*, 377 F.3d 246, 252 (2d Cir.2004) (applying the "[o]ffenses covered by the following guidelines are to be grouped" language to subsection (d) only); U.S. Sentencing Guidelines Manual § 3D1.2 cmts. (2004) (referring to "[s]ubsections (a)-(d)," "subsection (a)," etc.).

The parties do not dispute that § 2D2.1 falls within the "specific[ ] exclu[sion]" as to § 3D1.2(d) and that § 2D2.1 offenses cannot be grouped under that subsection; however, § 2D2.1 offenses *can* be grouped under subsections (a)-(c), if appropriate. Indeed, if the conditions listed in subsections (a)-(c) are met, grouping is mandatory; the guideline provides that "[a]ll counts ... *shall* be grouped." § 3D1.2 (emphasis added); *see also United States v. Lopez–Urbina*, No. 04–50135, 2005 WL 1940118, at *10, 2005 U.S.App. LEXIS 17143, at *29 (5th Cir. Aug. 15, 2005) (noting that "[u]se of the word 'shall' in [§ 3D1.2] indicates that Congress intended grouping to be mandatory if the appropriate requirements are met").

█ In the instant case, Appellant argues that grouping under subsection (a) is appropriate, and this Court agrees. Subsection (a) provides for grouping "[w]hen counts involve the same victim and the same act or transaction." As the Application Notes to § 3D1.2 explain, "[f]or offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the 'victim' for purposes of subsections (a) and (b) is the societal interest that is harmed." § 3D1.2 cmt. n. 2. Counts should be grouped together "when the societal interests that are harmed are closely related"; for example, counts involving "unlawfully entering the United States" and "possession of fraudulent evidence of citizenship" should be grouped "because the societal interests harmed (the interests protected by the laws governing immigration) are closely related." *Id.* "In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed." *Id.* The language of this commentary suggests that the laws forbidding "the sale of controlled substances" protect one unitary societal interest, even if multiple kinds of drugs are involved. This conclusion applies with particular force to the instant case, where the three counts at issue are all convictions under the exact same statute, 21 U.S.C. § 844. Thus, the counts involve "the same victim," and because the possession occurred on a single occasion—indeed, in a single Crown Royal bag—it involved "the same act or transaction." Grouping is

thus proper.[2]

Once the three drug counts are grouped, this case involves only one "Group" of offenses for purposes of the grouping calculations.[3] Under § 3D1.3(a), "the offense level applicable to a Group is the offense level ... for the most serious of the counts comprising the Group." § 3D1.3(a). Appellant's ultimate adjusted offense level is therefore not 11, as the magistrate judge had applied, but 8—the offense level for the first count, possession of crack cocaine. Assuming that the Presentence Report correctly calculated Appellant's criminal history category as I, this yields a guidelines sentencing range of 0–6 months.

## CONCLUSION

For the foregoing reasons, the Court concludes that the denial of Appellant's Motion to Suppress was appropriate, so the judgment of conviction will be affirmed by separate order. However, the Court also concludes that the Sentencing Guidelines range applied during Appellant's sentencing incorrectly failed to group multiple related counts, and consequently the sentence will, by separate order, be vacated and remanded to the magistrate for resentencing not inconsistent with this opinion.[4]

2. Even if the possession of multiple baggies of controlled substances were not part of "the same act or transaction," grouping would be appropriate under § 3D1.2(b): "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." § 3D1.2(b).

3. Appellant's fourth count, for illegal possession of an open container in a vehicle, is a class B misdemeanor that is not covered by the Sentencing Guidelines at all. *See* U.S.

Sentencing Guidelines Manual § 1B1.9. The magistrate judge was clear that the only penalty imposed for this charge was a fine: "As for the open container, we'll throw in a five hundred dollar fine." Tr. II at 33.

4. Of course, under *Booker*, the lower guidelines sentencing range that the grouping rules establish is only advisory; the magistrate judge may, if he so chooses, impose a sentence outside the guidelines range if he explains his reasons for doing so. *Hughes*, 401 F.3d at 546.