NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
I concur in Part III of the majority’s opinion with respect to the convictions and sentences of the defendants Brooks, W. Sparks, V. Sparks, and Witherspoon. I respectfully dissent from the majority opinion and judgment with respect to the defendant Mathis.
With respect to Mathis, the majority holds that although the jury found Mathis to be a member of a conspiracy that had agreed to distribute' 50 or more grams of crack cocaine — subjecting him and every other member of the conspiracy to an elevated sentence under 21 U.S.C. § 841(b)(1)(A) of 10 years’ to life imprisonment — Mathis must himself be sentenced only at the default level, the lowest level as authorized by 21 U.S.C. § 841(b)(1)(C), because the district court did not submit to the jury the task of finding the drug quantity individually attributable to Mathis to justify a higher level as to him. The district court sentenced Mathis as a member of the conspiracy found by the jury, and as part of the relevant conduct for sentencing purposes, found that Mathis was individually involved in the distribution of 3,249 grams of crack cocaine and that he possessed firearms. Accordingly, it sentenced him to 360 months’ imprisonment. In vacating the sentence, the majority purports to apply our decision in United States v. Collins, 415 F.3d 304 (4th Cir.2005), to require the jury, not the judge, to find the amount of cocaine indi *566 vidually attributable to Mathis in carrying out the conspiracy, even though for a conspiratorial conviction under 21 U.S.C. § 846, no amounts need to be attributable to Mathis or to any other member of the conspiracy. If Mathis had agreed to distribute more than 50 grams of cocaine but yet participated in no aspect of the distribution that followed, he would still be subject to the elevated sentencing level of 10 years to life, and not the low default level determined by the majority. The majority’s decision can only rest on the notion that relevant conduct in sentencing must, under Collins, be determined by a jury.
As I demonstrate herein, the majority’s opinion rests on a misreading of Collins, as well as flawed portions of that opinion, that makes the holding in this case incompatible with the Supreme Court’s decisions in Apprendi v. Neiv Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Instead of recognizing the irreconcilability of its reading of Collins with Booker, the majority mischaracterizes Booker as “solely a Sentencing Guidelines case,” ante at 560, that did not affect the statutory reasoning of Collins, even though both Booker and Collins actually responded to precisely the same dilemma: how to reconcile Congress’ intent in regard to federal sentencing with the Sixth Amendment implication of judicial factfinding that increases the maximum sentence to which a defendant is exposed.
In addition, the majority’s reading of Collins runs directly contrary to the Supreme Court’s pronouncements of federal conspiracy law.
At bottom, the majority opinion has condemned an entirely appropriate process for convicting and sentencing a major drug dealer for conspiracy — a process that has been and is followed routinely by the federal courts every day. See, e.g., United States v. Stiger, 413 F.3d 1185, 1192-93 (10th Cir.2005); United States v. Phillips, 349 F.3d 138, 141—43 (3d Cir.2003), vacated and remanded on other grounds sub nom. Barbour v. United States, 543 U.S. 1102, 125 S.Ct. 992, 160 L.Ed.2d 1012 (2005); United States v. Knight, 342 F.3d 697, 710-11 (7th Cir.2003); United States v. Turner, 319 F.3d 716, 722-23 (5th Cir.2003); Derman v. United States, 298 F.3d 34, 42-43 (1st Cir.2002).
I
The facts of Mathis’ conviction and sentencing are straight-forward. Mathis was charged with conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. Because conspiring to traffic in 50 grams is, under our decision in United States v. Promise, 255 F.3d 150, 152 n. 1, 156-57 (4th Cir.2001) (en banc), an offense different from conspiring to traffic in only a detectable amount of crack, the district court instructed the jury in this case to determine, as an element of the offense, whether 50 grams were “involved in the conspiracy as a whole.” The district court refused, however, to give an instruction asking the jury to find quantities attributable to each individual conspirator in carrying out the conspiracy. The jury found Mathis guilty of the conspiracy as charged, finding that Mathis conspired to distribute 50 grams or more of crack cocaine, subjecting him, as well as every other member of the conspiracy, to a sentence of 10 years’ to life imprisonment. See 21 U.S.C. § 841(b)(1)(A).
Then, during the sentencing proceedings, the district court found, in order to determine relevant conduct under U.S.S.G. § 1B1.3, that Mathis was individually involved in the distribution of 3,249 grams of crack cocaine. While Mathis was not re *567 quired to distribute any crack cocaine in order to be subject to the statutory sentencing range of 10 years’ to life imprisonment, the finding that he was involved in the distribution of 3,249 grams of crack cocaine, as well as possessed firearms, subjected him to a recommended Guidelines sentence of 360 months’ to life imprisonment. The district court, exercising its discretion under 18 U.S.C. § 3553(a), then sentenced Mathis to 360 months’ imprisonment — a sentence that readily fell within the 10-years-to-life sentencing range prescribed for conspiracy to distribute 50 grams or more of crack cocaine, see 21 U.S.C. §§ 846, 841(a), 841(b)(1)(A), as well as the 360-months-to-life sentencing range recommended by the Sentencing Guidelines.
The majority opinion, relying on its reading of Collins, holds that the jury had to find separately the threshold quantity of crack cocaine individually attributable to Mathis in carrying out the conspiracy for the purpose of determining the applicable range from § 841(b)(1), even though it had already found that the threshold quantity was within the scope of his conspiratorial agreement, for which he was convicted. Because the jury did not find the amount attributable to Mathis individually, the majority’s opinion would hold that Mathis can only be sentenced under § 841(b)(1)(C) to a maximum of 20 years’ imprisonment, even though the jury found a conspiratorial agreement to distribute over 50 grams of crack cocaine, exposing him to a maximum life sentence. In effect, the majority’s opinion purports to hold that each individual conspirator is accountable for an individual conspiratorial offense, different from the offense charged in the indictment. This holding, I suggest, misreads Collins, fails to apply Promise, and is fundamentally irreconcilable with Booker. Moreover, it effectively overrules Supreme Court conspiracy law on the nature of drug conspiracy liability and the penalties for that liability.
II
I begin by demonstrating how the majority opinion thoroughly tramples well-established conspiracy law.
Mathis’ criminal liability is fully described in the text of 21 U.S.C. § 846, which provides that “[a]ny person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.” In this case, the object of the conspiracy for which Mathis was convicted was to traffic in 50 grams or more of crack cocaine, which was, as our court has characterized it, a conspiracy to commit an “aggravated” drug offense. See Promise, 255 F.3d at 152 n. 1, 156-57. Because liability for the conspiracy was complete upon proof of the conspiratorial agreement and did not depend on how many grams of crack were attributed to Mathis individually in carrying out the conspiracy, Mathis became subject to the penalty for conspiracy to commit an aggravated drug offense without actually committing the offense which was the object of the conspiracy. See United States v. Yearwood, 518 F.3d 220, 227-28 (4th Cir.2008).
The district court in this case recognized this, and instructed the jury only to find the conspiratorial conduct and the object of the conspiracy as a whole. Following the court’s instructions, the jury found that the object of the conspiracy was the distribution of 50 grams or more of crack cocaine, an aggravated drug offense imputable to each member of the conspiracy, subjecting each member to a sentence of 10 years’ to life imprisonment under 21 U.S.C. § 841(b)(1)(A). The district court *568 properly refused to instruct the jury to find the amount of drugs attributable to each member of the conspiracy individually in carrying out the conspiracy because it recognized the scope of the criminal conduct committed to the jury’s factfinding. For purposes of finding whether Mathis was criminally liable for conspiracy, the fact that he actually distributed drugs was totally irrelevant to liability. That fact was then, and is now, only relevant to sentencing and could only be found by the sentencing judge as part of the sentencing process, not by the jury.
The Supreme Court has recognized repeatedly that overt acts are not necessary for drug conspiracy liability. See United States v. Shabani, 513 U.S. 10, 13-14, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); see also Whitfield v. United States, 543 U.S. 209, 212-14, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005). As the Supreme Court stated in Shabani, “In order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy.” 513 U.S. at 15, 115 S.Ct. 382. The Court explained:
Shabani reminds us that the law does not punish criminal thoughts and contends that conspiracy without an overt act requirement violates this principle because the offense is predominantly mental in composition. The prohibition against criminal conspiracy, however, does not punish mere thought; the criminal agreement itself is the actus reus and has been so viewed since Regina v. Bass, 11 Mod. 55, 88 Eng. Rep. 881, 882 (K.B.1705) (“[T]he very assembling together was an overt act”); see also Iannelli v. United States, 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (“Conspiracy is an inchoate offense, the essence of which is an agreement to commit any unlawful act”) (citations omitted).
Id. at 16, 115 S.Ct. 382.
Thus, in this case, Mathis was convicted of entering into a criminal agreement to traffic in more than 50 grams of crack cocaine, and the government need not have proved that any amount of cocaine was actually distributed by him or other members of the conspiracy, or was otherwise attributable to members, for their convictions to stand. As a member so convicted, Mathis was exposed to a sentence of 10 years’ to life imprisonment under § 841(b)(1)(A). His agreement alone to participate in a group that planned to distribute 50 grams or more of crack cocaine subjected him to this elevated sentence. This is because the conspiracy statute takes on as its penalty the penalty for the offense that is the object of the conspiracy, even if the object offense was never committed. See 21 U.S.C. § 846; Promise, 255 F.3d at 152 n. 1, 153 n. 3, 156-57.
Therefore, it is totally improper for us to require a district court to have a jury find additional “elements” of the conspiracy offense, such as specific drug amounts with which each conspirator was personally involved in carrying out the conspiracy, when deciding liability on a conspiracy charge. In this case, when the district court instructed the jury that the object of the conspiracy charged was the offense to distribute 50 grams or more of crack cocaine and that the jury had to find whether the agreement of the conspiracy was to distribute 50 grams or more of crack cocaine, that was the only instruction that the district court could have given.[1] What *569 happened later in carrying out the conspiracy was irrelevant to criminal liability for the conspiracy itself. Only when it came time for sentencing would the court need to focus on relevant conduct, which could include what each conspirator actually did do in carrying out the conspiracy.
When the object of a § 846 conspiracy offense is, in particular, a drug trafficking offense under § 841(a), the district court must, as a result of our decision in Promise, instruct the jury to determine which of three object offenses is involved. As we held in Promise and as the majority seems to recognize, the threshold drug quantities specified in § 841(b)(1)(A), (B), and (C) define three separate offenses because the “threshold quantities” are elements of each distinct offense. Promise, 255 F.3d at 156-57. As we explained in Promise, even though “Congress intended these specific threshold quantities [in § 841(b)(1) ] to be sentencing factors rather than elements of aggravated drug trafficking offenses,” as a result of the Supreme Court’s decision in Apprendi, these threshold amounts became elements of three separate offenses, a default offense and two “aggravated” drug trafficking offenses. Id. Thus, in the context of crack cocaine, the distribution of an unspecified quantity of crack cocaine would subject the defendant to a maximum term of imprisonment for 20 years, see 21 U.S.C. § 841(b)(1)(C); the distribution of at least 5 grams of crack cocaine would subject the defendant to a term of imprisonment for not less than 5 years but not more than 40 years, see id. § 841(b)(1)(B); and the distribution of at least 50 grams of crack cocaine would subject the defendant to a term of imprisonment for not less than 10 years and up to life imprisonment, see id. § 841(b)(1)(A).
Because the threshold amounts became elements of a drug trafficking offense, we required in Promise that those elements be committed to the jury when finding whether an aggravated drug trafficking offense took place. But we carefully pointed out that we were not committing to the jury a finding of all drug quantities that “could serve to increase a defendant’s sentence.” Promise, 255 F.3d at 156 n. 5. “The task of identifying the amount of drugs for which the defendant should be held accountable at sentencing [was] left to the district court pursuant to the principles set forth in the sentencing guidelines.” Id. at 157 n. 6 (emphasis added).
Similarly, when a conspiracy is charged, we commit to the jury the task of determining whether the object offense was an aggravated drug offense under § 841(b)(1)(A) of (B) or a default offense under § 841(b)(1)(C). But we do not require that the jury find that the conspirator actually committed the object offense. As already explained, the offense of conspiracy is the agreement to participate in the object offense, whether it later was committed or not. Thus, if several defendants meet in the upper room and agree to engage in a large conspiracy to distribute 50 grams or more of crack cocaine, they have by that agreement alone committed an offense punishable by 10 years’ to life imprisonment. And if a member of that conspiracy never performs an overt act, he nonetheless must be sentenced within the penalty range set forth in § 841(b)(1)(A), because that object offense determines the scope of the conspiracy. Thus, every member of that conspiracy becomes subject to the same penalty range.
Contravening these well-established principles of conspiracy law, the majority *570 purports to apply Collins to hold that the jury, not the judge, must find an amount of drugs individually attributable to a conspiracy defendant in the course of his carrying out the conspiracy. In other words, under the majority’s application of Collins, a conspiracy conviction would no longer represent the imposition of criminal liability solely for the actus reus of entering into an illegal agreement to engage in a particular criminal enterprise. Instead, the conviction for conspiracy would serve almost no independent purpose at all because the jury is now required, with the majority’s reading of Collins, to find beyond a reasonable doubt facts sufficient to support conviction for the substantive offense. Under the majority’s holding, only conspirators to whom a threshold drug quantity can be individually attributed are exposed to the “aggravated” penalty provisions of § 841(b)(1)(A) and (B), even though all convicted conspirators, by definition, joined a conspiracy that had an “aggravated” substantive offense as its object.
The majority’s holding is illogical, and it destroys the very foundation of conspiracy law. The majority rules that the extent of criminal liability for conspiracy turns on the performance vel non of substantive acts in furtherance of the conspiracy. Yet “conspiracy is a distinct offense from the completed object of the conspiracy,” Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), and a defendant convicted of conspiracy is liable for the conspiracy to the extent of the entire scope of the conspiracy, United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993). See also United States v. Bayer, 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947) (“the agreement to do the act is distinct from the act itself’); Yearwood, 518 F.3d at 228 (distinguishing between “participation in the criminal act itself’ and “participation in an agreement to perform that act”). To insist on a jury finding of drug quantity attributable to each individual defendant, notwithstanding the jury’s finding of drug quantity for the object of the conspiracy as a whole, thus eliminates the elemental basis for conspiracy liability. It essentially creates individualized conspiracy convictions for each defendant, obliterating any notion that the basis for liability is the common agreement to achieve the particular illegal act that is the object of the conspiracy.
In short, conspiracy liability attaches upon entering into an illegal agreement and, after Promise, the object of a drug conspiracy under 21 U.S.C. § 846 must be one of three offenses: (1) the base-level substantive offense under § 841(a) and § 841(b)(1)(C); (2) an “aggravated” offense under § 841(a) and § 841(b)(1)(B); or (3) a more “aggravated” offense under § 841(a) and § 841(b)(1)(A). As such, every member of a given conspiracy is convicted of the same conspiracy — i.e., the same agreement to accomplish the same object offense — and therefore is properly subject to the same statutory range of punishment, not individualized ranges, as the majority holds.
Ill
In addition to leveling at their roots longstanding principles of conspiracy law, the majority applies its reading of Collins as controlling precedent to contradict the Supreme Court’s holding in Booker for purposes of sentencing. It accomplishes this by simply repeating Collins’ mistaken reliance on our earlier decision in United States v. Irvin, 2 F.3d 72 (4th Cir.1993), without undertaking the necessary analysis which would show that Collins (1) misapplied Irvin, (2) misread Promise, and (3) ignored the existence and implications of Booker. As I will demonstrate, any of these three errors is sufficient to under *571 mine the majority’s reliance on Collins. Indeed, the particular impact of Booker on Collins requires us to abandon Collins in part, in order to remain in compliance with the teaching of the Supreme Court regarding federal sentencing.
Because of the layers involved, I begin in an analytical sequence with a discussion of Irvin, and then proceed to Promise, and finally to Booker.
A. Misapplying Irvin
First, the majority repeats Collins’ mistake in presuming that anything in Irvin compels the rule that conspiracy liability is dependent upon an individual conspiracy defendant’s substantive acts.
In Irvin, we held that in order to properly sentence defendants convicted of drug conspiracies under 21 U.S.C. §§ 846 and 841(a), the sentencing judge must make individualized assessments of relevant offense conduct “to determine the quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement.” Irvin, 2 F.3d at 78. The quantity found by the district court under this approach was then used to determine both the applicable penalty range from 21 U.S.C. § 841(b) and the applicable (and then-mandatory) range of punishment under the Sentencing Guidelines. This was entirely consistent with the governing practice at that time, several years before the Supreme Court’s ruling in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Irvin, we rejected the government’s argument that § 846 required the district court to determine the applicable provision of § 841(b) by finding the drug quantity at the heart of the offense that was the object of the conspiracy and then applying that amount to every member of the conspiracy for purposes of sentencing. Id. at 75-77. The Irvin court based its holding on its understanding that Congress’ intent in passing § 846 was “not to increase exposure for criminal punishment beyond that already available, but ‘to synchronize the penalties for conspiracies and their underlying offenses ... [by] ensuring] that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession of the same amount of narcotics.’” Id. at 77 (quoting United States v. Martinez, 987 F.2d 920, 925 (2d Cir.1993)) (omission and alterations in original).
A proper understanding of Irvin’s, holding must take account of the fact that at the time it was decided, there was but a single statutory offense under § 841(a), regardless of drug quantity, and the question of which provision of § 841(b) applied was merely one of sentencing, not one of which offense was committed. Therefore, any defendant convicted of a substantive violation of § 841(a), or of conspiracy under § 846 to commit a substantive violation of § 841(a), was exposed, statutorily, to the full range of punishment outlined in § 841(b), from zero to life imprisonment. But as noted, the Sentencing Guidelines at the time were mandatory. The post-conviction judicial factfinding called for under that system greatly narrowed the permissible range of punishment, and the district court’s factfinding under the Guidelines served to fix both the applicable penalty range under § 811(b) and the mandatory Guidelines range. Irvin, 2 F.3d at 78.
Admittedly, these two facts — the existence of mandatory Sentencing Guidelines and the lack of a particular provision of § 841(b) that applied as an element of the offense to the conspiracy as a whole — may well have led to substantially varying sentences among coconspirators commensurate with their level of involvement in the conspiracy and specifically with the *572 amount of conspiratorial activity reasonably foreseeable to them. Nonetheless, this wide range of sentences for members of a single conspiracy did not violate the principles of conspiracy law because of the conceptual paradigm reigning at that time: a defendant’s conviction under §§ 846 and 841(a) was for the single offense of conspiracy to distribute narcotics, without regard to drug quantity. Therefore, any subsequent determination of drug quantity — whether to determine the appropriate category of § 841(b) or to apply the then-mandatory Guidelines — was wholly related to sentencing and had no bearing whatsoever on the defendant’s criminal liability for the conspiracy itself or on the nature of the conspiracy’s object offense.
Irvin was thus concerned only with what facts regarding drug quantity needed to be found for sentencing after the jury returned an undifferentiated conviction for conspiracy — that is, a conspiracy conviction that made no findings about drug quantity. It was therefore error for the Collins court to have applied Irvin’s holding from the pr e-Apprendi and pr e-Promise era, when § 841(a) described a single offense and § 841(b) merely contained sentencing factors for the district court to consider, as if it survived the post-Appren-di and post-Promise era, when § 841(a) was found to describe three separate and distinct offenses, based on the determination of § 841(b) threshold drug quantity by the jury as an element of the offense. Once the threshold drug quantities specified in § 841(b)(1)(A), (B), and (C) became elements of three separate offenses, rather than mere sentencing factors, Irvin no longer controlled their proper application. Thus, Collins was wrong in blindly following Irvin, and the majority is wrong in blindly following Collins.
B. Misreading Promise
In addition, the majority fails to recognize that Collins misread Promise by concluding that Promise had not fully satisfied Apprendi’s requirements in the context of drug conspiracies under §§ 846 and 841. As noted, when this court, sitting en banc in Promise, applied Appren-di to § 841, we transformed the § 841(b) threshold drug quantities from mere sentencing factors into elements of three separate offenses under § 841(a): (1) a “default” offense corresponding to § 841(a) and § 841(b)(1)(C); (2) an “aggravated” offense corresponding to § 841(a) and § 841(b)(1)(B); and (3) a more “aggravated” offense corresponding to § 841(a) and § 841(b)(1)(A). See Promise, 255 F.3d at 156-57. The threshold drug quantities found in § 841(b) thus ceased to be sentencing factors for the district court and became elements of the crime to be found by the jury. This became true also for conspiracy offenses under § 846 when a § 841(a) offense was the object of the criminal agreement. See Promise, 255 F.3d at 153 & n. 3 (noting that Promise was convicted of conspiracy under § 846, but that § 846 takes on the same penalties as those prescribed for the object offense— here, § 841(a) and § 841(b)(1)).
Therefore, by creating three separate offenses under § 841(a) and (b) and by requiring the government to charge and prove, and the jury to find beyond a reasonable doubt, the threshold drug quantity of the conspiracy as a whole, Promise abrogated the portion of Irvin that required the sentencing judge to determine the applicability of § 841(b) on an individualized basis for each defendant. Similarly, because the conspiracy under §§ 846 and 841(a) now included as elements of the crime the threshold drug amounts specified in § 841(b), it was no longer necessary, nor even permissible, for the judge to determine the statutory range of punish *573 ment. Indeed, it was precisely the sort of judicial determination of which statutory range of penalty applied as called for in Irvin, that the Apprendi court held unconstitutional under the Sixth Amendment. See Apprendi, 530 U.S. at 485-90, 120 S.Ct. 2348. Under the Promise scheme, the jury necessarily identified the proper range of punishment for all conspirators by virtue of its finding of a threshold drug quantity as part of its verdict. In other words, where Irvin required the sentencing judge to make findings of drug quantity to satisfy both § 841(b) and the Sentencing Guidelines, Promise removed the § 841(b) finding from the judge and gave it to the jury to find as an element of the offense. The sentencing judge was left to make only the findings necessary to apply the Sentencing Guidelines within the § 841(b) statutory range authorized by the jury’s verdict.
Collins failed to recognize this necessary consequence of Promise. Instead, it located language in Irvin instructing the “district court to determine the accountability of each coconspirator for each object offense and the quantity of narcotics involved in each object offense,” Irvin, 2 F.3d at 76, and concluded that Apprendi required this language to be “altered” by replacing “a district court” with “the jury” and inserting “beyond a reasonable doubt” as the burden of proof. Collins, 415 F.3d at 313-14. The Collins court reached this result apparently without comprehending the significance of our holding in Promise, which had already taken the § 841(b) determination away from the district court as a sentencing matter and had given it to the jury as an element of the offense. Compare id. at 313 n. 5 (acknowledging Promise’s holding that the jury must find “the specific threshold quantity ... as an element of an aggravated drug trafficking offense” (emphasis added) (internal quotation marks omitted)) with id. at 314 (holding nonetheless that the jury must make individualized § 841(b) findings “for sentencing purposes”).
There was thus no reason for Collins to reach this question, let alone to hold in the manner that it did. Any Sixth Amendment problem had already been answered by our full court sitting en banc in Promise, and any language from Irvin instructing the district court to make the findings necessary to choose the proper statutory range under § 841(b) had already been nullified by Promise’s transformation of the threshold drug quantities in § 841(b) into elements of three separate offenses. Quite simply, there was no error left for Collins to find or to correct.
Nor was it left open to Collins to decide whether the jury’s finding of a threshold drug quantity in a conspiracy case under § 846 should focus on the conspiracy as a whole or the amount attributable to each individual defendant. We recognized in Promise, consistent with both the language of § 846 and the principles of conspiracy law described above, that the penalties for a conspiracy under § 846 are the same as those for the offense that is the object of the conspiracy. See 21 U.S.C. § 846; Promise, 255 F.3d at 153 n. 3. In Irvin’s day, the penalty for the single object offense described under § 841(a) was unrestricted by the jury’s verdict, and it thus made sense for the district court’s individualized sentencing determination to control the selection of the applicable provision of § 841(b) as well as the then-mandatory Guidelines range. But upon the creation in Promise of three distinct offenses under § 841(a), it became necessary for the jury to find the quantity attributable to the object offense, that is, to the conspiracy as a whole, in order for the aggravated penalty provisions of § 841(b) to apply and for the concept of a conspiracy as punishing only the entering into of a *574 criminal agreement to retain any validity. If the jury were permitted or required to make individualized findings of threshold drug quantity, the existence of a conspiratorial agreement would become irrelevant. Thus, to remain faithful to both Promise and conspiracy law generally, see Whitfield, 543 U.S. at 212-14, 125 S.Ct. 687; Shabani 513 U.S. at 15-16, 115 S.Ct. 382; Yearwood, 518 F.3d at 225-30, the jury’s threshold drug quantity determination in a conspiracy case must make reference to the conspiracy as a whole.
Therefore, when the majority in this case explains that “we recognized in Collins that, under the Irvin precedent, ‘the subsection of § 841(b) applicable to an individual defendant is determined by a consideration of the amount of narcotics attributable to that defendant,’ ” ante at 558 (quoting Collins, 415 F.3d at 313), it repeats Collins’ error in failing to recognize that Promise had already altered the Irvin precedent on precisely this point. When the determination of which provision of § 841(b) applied to an individual defendant was part of the sentencing process, it made sense to apply sentencing principles, which at the time of Irvin (and continuing today) were based on relevant offense conduct individually attributable to the defendant. See Irvin, 2 F.3d at 73-74 & n. 2; U.S.S.G. § 1B1.3. But when Promise shifted the § 841(b) threshold drug-quantity determination to the jury as an additional element of the conspiracy offense, it required the government to charge and prove, and the jury to find beyond a reasonable doubt, that the threshold drug quantity was an element of the object offense, subjecting each member of the conspiracy — i.e., each defendant who joined the agreement to distribute 50 grams of crack' — to the same statutory range of penalties.
Thus, in order to convict a conspiracy defendant of agreeing to distribute drugs at a level that constitutes an “aggravated” offense, the jury is required to find that the defendant knowingly joined the agreement and that the agreement involved the distribution of the threshold quantity of drugs specified in § 841(b)(1). Such a finding by the jury is all that is necessary to expose each and every member of the conspiracy to the “aggravated” statutory penalty range. What the member of the conspiracy actually did in carrying out the conspiracy is relevant only to calculate the advisory Sentencing Guidelines range and to determine the appropriate sentence within the § 841(b)(1) statutory range.
C. Ignoring Booker
The majority recognizes, as did Collins itself, that the principles of relevant conduct and reasonable foreseeability must still be applied to determine the precise amount of drugs attributable to a defendant for sentencing purposes. See ante at 558; Collins, 415 F.3d at 314. But the majority errs, as did Collins before it, when it presumes that this determination, for sentencing purposes, must be made by the jury rather than the sentencing judge. As just explained, the jury fulfills its duty under the Sixth Amendment when it finds beyond a reasonable doubt that a defendant knowingly entered into a criminal agreement to achieve an object offense involving a threshold drug quantity. Such a finding is both necessary and sufficient to establish the applicable provision of § 841(b) as the governing statutory range of punishment for that defendant. And once the statutory range of punishment is fixed by the jury’s verdict, no further fact-finding by the jury is necessary for sentencing purposes. Therefore, Collins was wrong, and the majority is wrong, to require more.
*575 That this is true is conclusively demonstrated by the Supreme Court’s opinion in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). There, the Supreme Court faced the question of how to resolve the Sixth Amendment problems created by the federal sentencing scheme intended by Congress, which relied heavily on judicial factfinding to increase uniformity of sentencing and ensure similar sentences for similar conduct by similarly situated defendants. See Booker, 543 U.S. at 246-49, 125 S.Ct. 738. We faced precisely the same question in Collins. See Collins, 415 F.3d at 313-14 (reexamining Irvin in light of Apprendi’s application of the Sixth Amendment to statutory “sentencing factors” like § 841(b)); Irvin, 2 F.3d at 77 (explaining that Congress’ intent in passing § 846 was “to synchronize the penalties for conspiracies and their underlying offenses” (internal quotation marks omitted)). As in Booker, the question in Collins was whether and how to modify federal sentencing practice, which encompassed both § 846 and the Sentencing Guidelines, to comply with the demands of the Sixth Amendment, as elucidated in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), Apprendi, and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
The Supreme Court’s solution in Booker was to make the Guidelines advisory and return factfinding for sentencing purposes from the jury to the sentencing judge. The Court accomplished this by striking down the provisions making the Guidelines mandatory. Booker, 543 U.S. at 245, 125 S.Ct. 738. As a result, the maximum sentence was no longer fixed by mandatory Guidelines, but by statute. Even so, the Court recognized that the Sixth Amendment required that any fact necessary to justify the statutory maximum would still have to be submitted to the jury. But within the statutory maximum justified by jury factfinding, it returned sentencing factfinding to the sentencing judge to enable the judge to exercise discretion in selecting the appropriate sentence. Id. at 259-60, 125 S.Ct. 738.
The holding in Booker was fully consistent with our circuit’s practices following Promise. ■ Under our practices as fixed by Promise, the government was required to charge and prove, and the jury was required to find beyond a reasonable doubt, the threshold drug quantity that formed an element of the § 841(a) object offense for any defendant facing conspiracy charges under § 846. Promise, 255 F.3d at 156-57. The jury’s factfinding thus established a statutory range, and the sentencing judge then found any additional facts necessary to determine the appropriate sentence within that range. Because that sentencing factfinding focused on the separate relevant conduct of each member of the conspiracy, see U.S.S.G. § 1B1.3, the sentencing judge could determine a different sentence for each member — but always within the statutory range determined by the jury. See Promise, 255 F.3d at 156 n. 5 (emphasizing that “[w]e do not hold that ‘all facts that could serve to increase a defendant’s sentence must be found by the jury beyond a reasonable doubt’ ” and clarifying that once the jury’s findings establish the maximum statutory penalty, “a fact ... that may increase the actual sentence imposed within that maximum is not subject to the same requirements” as the elements found by the jury); id. at 157 n. 6 (restricting the jury’s role to “determining] whether an offense involved a specific threshold drug quantity” and stating that “[t]he task of identifying the amount of drugs for which the defendant should be held accountable at sentencing is left to the district court pursuant to the principles set forth in the sentencing *576 guidelines”). Booker prescribed precisely the same procedure, altered only to reflect the fact that the Guidelines are now “effectively advisory.” Booker, 543 U.S. at 245, 125 S.Ct. 738.
It is thus inescapable that the holding in Booker is inconsistent with the rule we announced in Collins, whereby the district court is required to disregard the jury’s finding of the threshold drug quantity applicable to the conspiracy as a whole and instead must relinquish to the jury its role as factfinder of relevant offense conduct for sentencing purposes. See Collins, 415 F.3d at 313 (noting that the district court in that case “erred by not issuing a further instruction [to the jury] relating to the factual predicate necessary for sentencing ” (emphasis added)); id. at 314 (requiring the jury to determine “the appropriate sentence under § 841(b)” (emphasis added)); id. (noting “the district court’s failure to issue appropriate jury instructions concerning the facts necessary to determine Collins’ sentence ” (emphasis added)). Indeed, the Supreme Court considered adopting a regime where all facts necessary to determine a sentence would be submitted to the jury, analogous to our holding in Collins that the facts necessary to determine an individual defendant’s sentence under § 846 must be submitted to the jury. But the Supreme Court rejected that option and thus effectively overruled Collins. As the Court explained:
One approach, that of Justice STEVENS’ dissent, would retain the Sentencing Act (and the Guidelines) as written, but would engraft onto the existing system today’s Sixth Amendment “jury trial” requirement. The addition would change the Guidelines by preventing the sentencing court from increasing a sentence on the basis of a fact that the jury did not find (or that the offender did not admit).
The other approach, which we now adopt, would (through severance and excision of two provisions) make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender’s real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve.
Booker, 543 U.S. at 246, 125 S.Ct. 738 (emphasis added); see also id. at 249-58, 125 S.Ct. 738 (providing numerous reasons why Justice Stevens’ proposed Collins type remedy was incompatible with Congress’ intent for federal sentencing).
Justice Stevens argued, in dissent, for a continuation of the regime that we had, in effect, adopted in Collins, saying, “I would simply allow the Government to continue doing what it has done since this Court handed down Blakely — prove any fact that is required to increase a defendant’s sentence under the Guidelines to a jury beyond a reasonable doubt.” Booker, 543 U.S. at 284-85, 125 S.Ct. 738 (Stevens, J., dissenting) (emphasis added); cf. Collins, 415 F.3d at 313-14 (requiring the jury to find “the facts necessary to determine Collins’ sentence” under §§ 846 and 841). Despite Justice Stevens’ arguments, however, the Court adopted an approach that made the Guidelines advisory and returned sentencing factfinding to the district court. Booker, 543 U.S. at 246, 125 S.Ct. 738. And in rejecting a jury factfinding scheme for sentencing issues, the Booker court also rejected the very scheme that we had adopted in Collins for § 846 sentencings. As the Court explained in Booker:
To engraft the Court’s constitutional requirement onto the sentencing statutes ... would destroy the system [intended by Congress]. It would prevent a judge from relying upon a presentence report for factual infor *577 mation, relevant to sentencing, uncovered after the trial. In doing so, it would, even compared to pre-Guide-lines sentencing, weaken the tie between a sentence and an offender’s real conduct. It would thereby undermine the sentencing statute’s basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways.
Booker, 543 U.S. at 252, 125 S.Ct. 738. Thus, a majority of the Supreme Court opted to restore judicial factfinding for sentencing within a statutory range properly determined by the jury, in order to remain faithful to Congress’ overriding intent to “maintain[] a strong connection between the sentence imposed and the offender’s real conduct.” Id. at 246, 125 S.Ct. 738.
The very same concern — maintenance of a connection between punishment received and the defendant’s real conduct — animated our original holding in Irvin. See Irvin, 2 F.3d at 78. When Promise changed the definition of the crime of conspiracy to distribute drugs, 255 F.3d at 156-57, it necessarily changed the calculus involved in maintaining that connection and determining the appropriate sentence for defendants convicted of that crime. Collins proposed one answer to this changed calculus: it set aside the notion that each defendant was convicted of participation in a common agreement, and instead required the jury to make factual findings regarding substantive acts in order to make individualized statutory sentencing range determinations for those convicted of precisely the same conspiracy crime. Collins, 415 F.3d at 313-14. Manifestly, this result was in harmony with neither Booker, nor Promise, nor Irvin.
Booker, meanwhile, rejected the Collins approach of requiring additional jury fact-finding of relevant conduct for sentencing, and instead required the jury to find only the facts necessary to establish the applicable statutory range, which, for § 846 drug conspiracies, is satisfied when the jury determines the threshold drug quantity of the conspiracy’s § 841 object offense. See Booker, 543 U.S. at 228, 267, 125 S.Ct. 738 (noting that in the companion case, Fanfan was indicted for and convicted of a conspiracy under §§ 846, 841(a)(1) and 841(b)(1)(B), which entitled the government to seek resentencing under the advisory Guidelines in accordance with the Court’s remedial scheme); see also Kim-brough v. United States, — U.S. -, 128 S.Ct. 558, 564 n. 1, 169 L.Ed.2d 481 (2007) (noting that for Sixth Amendment purposes, the “statutory range” for possession and conspiracy offenses is the same); Promise, 255 F.3d at 156-57 (requiring the government to charge in the indictment and the jury to find beyond a reasonable doubt the specific threshold drug quantity in § 841(b) to convict a defendant of “aggravated” conspiracy and impose a higher statutory sentence).
Thus, there can be no doubt that since Booker, Collins is entirely out of step with the Supreme Court’s view of federal sentencing policy, as well as its view of Congress’ intent with regard to federal sentencing. Collins requires the jury to find facts for sentencing purposes, see 415 F.3d at 313-14, despite Booker's clear holding that such fact-finding is within the purview of the district court, see 543 U.S. at 245-46, 259-60, 125 S.Ct. 738. Moreover, Collins leads to widely disparate sentences for the same underlying drug conspiracy crime, because it requires the application of § 841(b) to be uniquely tailored to each individual defendant, despite the fact that the threshold quantity of § 841(b) is now an element of the conspiracy offense common to each defendant’s conviction by the jury. This uncoupling of the defendant’s *578 sentence from his conviction violates Booker’s clear instruction to honor Congress’ desire to maintain a connection between what the defendant did — i.e., agree to commit an aggravated § 841(a) drug-distribution crime — and how the defendant is sentenced. Booker, 543 U.S. at 250-52, 264, 125 S.Ct. 738.
The facts of this case could not make the point more clearly. Mathis was a ringleader of a large, long-term conspiracy involved in distributing thousands of grams of crack cocaine. Yet, because of purported Collins error, Mathis will now be sentenced at the default level of § 841(b)(1)(C), far below the sentence of most of his coconspirators, even though the jury found beyond a reasonable doubt that they all — Mathis included — joined the same conspiracy to traffic in drugs at the aggravated drug offense level of § 841(b)(1)(A), and even though the district court properly found as relevant sentencing facts that Mathis was responsible for distributing more crack than any of his coconspirators — more than 3,200 grams. Without question, this perverse approach most assuredly does not “ensur[e] similar sentences for those who have committed similar crimes in similar ways,” Booker, 543 U.S. at 252, 125 S.Ct. 738, nor does it “ensur[e] that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession,” Irvin, 2 F.3d at 77 (internal quotation marks omitted).
For all these reasons, I would adhere to this court’s post -Promise, pr e-Collins approach, modified as necessary after Booker and its progeny. Now, post-Booker, when applying its principles to drug conspiracy cases brought under 21 U.S.C. §§ 846 and 841, the indictment must charge and the government must prove to the jury a conspiratorial agreement to distribute the threshold quantity of drugs specified in 21 U.S.C. § 841(b)(1)(A) or (B) if it wishes to convict the defendant of the more serious offenses represented by the enhanced sentences provided by those subsections. But the government need not charge or prove to the jury, and the jury need not find, any drug quantities actually attributable to any conspiracy defendant, either for purposes of conviction or for sentencing. Judicial factfinding of relevant conduct, including individually attributable drug, quantity, by a preponderance of the evidence remains appropriate post-Booker to sentence a convicted conspiracy defendant under the now-advisory Guidelines and within the statutory range authorized by the jury’s verdict.
IV
In this case, the defendants were charged with conspiracy “to distribute and to possess with intent to distribute five kilograms or more ofi cocaine and fifty grams or more of cocaine base, commonly known as ‘crack cocaine,’ ” in violation of 21 U.S.C. §§ 846 and 841(a)(1). The jury returned a verdict finding them guilty of the offense, and finding explicitly that they were participants in a conspiracy involving 50 grams or more of crack cocaine. With this finding by the jury, the defendants as members of the conspiracy were convicted of an offense that included a statutory sentencing range of 10 years’ to life imprisonment, as provided in 21 U.S.C. § 841(b)(1)(A). Thus, under Booker, the sentencing judge had discretion to sentence each defendant, including Mathis, in the statutory range of 10 years’ to life imprisonment.
At the sentencing hearing, the district judge was authorized, under the Booker scheme of sentencing, to find the facts necessary to make an appropriate calculation of the sentence recommended by the *579 Sentencing Guidelines and to exercise discretion in selecting a sentence within the statutory range that appropriately accomplished the goals of 18 U.S.C. § 3553(a)(2). See Kimbrough, 128 S.Ct. at 570, 574; Gall v. United States, — U.S. -, 128 S.Ct. 586, 596-97, 169 L.Ed.2d 445 (2007). Consistent with this post-Booker sentencing scheme, the district court found that Mathis was individually responsible for the distribution of 3,249 grams of crack cocaine and that he possessed firearms in connection with the conspiratorial activity. After properly calculating the recommended Sentencing Guidelines range based on these facts and considering the § 3553(a) factors, the district court imposed a 360-month term of imprisonment, which fell within the statutory range authorized by the jury’s factfinding — 10 years’ to life imprisonment — as well as within the Sentencing Guidelines’ recommended range of 360 months’ to life imprisonment.
The entire procedure before the district court was fully consistent with the Sixth Amendment, with Supreme Court precedent, with statutory requirements, with congressional intent, and with our own precedents properly applied. There simply was no error.[2]
I accordingly would reject Mathis’ argument that the district court violated his Sixth Amendment rights by finding sentencing facts, and I would further conclude that Collins is at least in part incompatible with both our en banc opinion in Promise and the Supreme Court’s opinion in Booker, and therefore should, to that extent, be disregarded as no longer applicable or controlling law in our circuit. Although I believe that our circuit precedent does not prevent this panel from recognizing that this portion of Collins is defunct,[3] the majority has elected not to do so.
I would, accordingly, affirm.

. Of course, this is not to suggest that the district court could not have given an instruction to the jury permitting it to find a conspiracy to commit the "lesser included” offense of a § 841(b)(1)(B) or (C) offense, rather than the § 841(b)(1)(A) offense charged. I agree *569 with the majority on this point. See ante at 555 n. 9. That discussion, however, is irrelevant to this case inasmuch as the jury found that the object of the conspiracy was the aggravated drug offense stated in § 841(b)(1)(A) and charged in the indictment.

. The very phrase “Collins error” is a misnomer, and our cases that have reviewed Collins claims under the plain error standard ought properly to have disposed of such claims at the first step of that review. Notably, in the only published decision of our court — until today — to analyze a claim of “Collins error,” we acknowledged that Collins renders us an outlier among the circuits. United States v. Foster, 507 F.3d 233, 250-51 & n. 12 (4th Cir.2007). Further, we declined to recognize the so-called “error,” noting that "if we disturbed Foster’s sentence on the drug conspiracy count, we would seriously affect the fairness, integrity, and public reputation of judicial proceedings.” Id. at 252. The majority’s flawed reliance on Collins in this case similarly threatens the fairness, integrity, and public reputation of judicial proceedings, not only because the drug quantity evidence against Mathis was overwhelming, but also because the district court did nothing wrong.

. We of course follow the principle that a "decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court.” Etheridge v. Norfolk & W. Ry. Co., 9 F.3d 1087, 1090 (4th Cir.1993) (internal quotation marks omitted). But Collins is not protected by this principle and therefore has little prec-edential power on this issue. See McMellon v. United States, 387 F.3d 329, 332-33 (4th Cir.2004). In addition, Collins is inconsistent with Booker, a "superseding contrary decision” by the Supreme Court, and we are obliged to follow the Supreme Court’s opinions where they conflict with our own.
I am not troubled by the fact that Booker predated Collins for three reasons. First, a Supreme Court decision need not be "subsequent” to a panel decision in order to “supersede]” it, as both common sense and the plain language of Etheridge indicate. Second, Collins itself expressly disclaimed any discussion or application of Booker in its analysis, see 415 F.3d at 306 n. 1, and in fact did not mention Booker at all in its discussion of the drug quantity sentencing issue. Third, no published decision of this court — until today — has purported to examine Collins in light of Booker and conclude that the latter did not supersede the former.