PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-7445

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ABEL CASTILLO RANGEL,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Claude M. Hilton, Senior District Judge.   (1:95-cr-00486-CMH-4; 1:13-cv-00050-CMH)

Argued: December 10, 2014          Decided: April 1, 2015

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Affirmed by published opinion.   Judge Agee wrote the opinion, in which Judge Duncan and Judge Harris joined.

**ARGUED**: Sejal Jhaveri, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.   Stephen Wiley Miller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.   **ON BRIEF:** Stephen L. Braga, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.   Dana J. Boente, United States Attorney, Rebeca H. Bellows, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

AGEE, Circuit Judge:

Abel Castillo Rangel was convicted in 2010 of three counts relating to marijuana trafficking and sentenced to 121 months of incarceration. He later filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, alleging that his trial and appellate counsel had rendered constitutionally ineffective assistance. The district court denied his motion, and we granted a certificate of appealability identifying three issues: 1) whether Rangel's trial counsel was ineffective for not requesting an instruction that the jury find a drug weight based on the amount attributable to or reasonably foreseeable by Rangel; 2) whether his appellate counsel was ineffective for not raising the failure to request that instruction as an issue on direct appeal; and 3) whether his trial counsel was ineffective for failing to object to the drug weight and advisory guidelines range at sentencing. For the reasons explained below, we affirm the district court's judgment.

## I. Background

On November 28, 1995, a federal grand jury in Alexandria, Virginia indicted Rangel and five co-defendants for crimes related to marijuana trafficking. The indictment charged Rangel in four counts: Count 1 for conspiracy to distribute over 1,000 kg of marijuana from 1990 through 1995 (21 U.S.C. § 846); Count

2

4 for possession with intent to distribute marijuana on September 30, 1992 (21 U.S.C. § 841(a)); Count 7 for distribution of marijuana on October 1, 1992 (21 U.S.C. § 841(a)); and Count 10, which was later dismissed, asserting forfeiture allegations.

Following his indictment, Rangel absconded to Texas, assumed an alias, and evaded arrest until March 23, 2010. He was subsequently tried by a jury and found guilty on the charges in the indictment on August 25, 2010.

## A. Trial Evidence

The government presented six witnesses at trial: four law enforcement officers and two of Rangel's coconspirators. Fairfax County Detective Chester Toney testified that on September 30, 1992, he responded to a tip from a confidential informant about an upcoming marijuana transaction at a 7-Eleven. Detective Toney observed three men at that location, including an individual later identified as Michael Hillman, exit Rangel's pickup truck carrying a bag that appeared to contain marijuana. Police officers stopped and searched the three men and found 1.95 pounds (0.89 kg) of marijuana on Hillman. Rangel was not arrested at that time.

The next day, October 1, 1992, the informant told Detective Toney that a second marijuana transaction would take place that night at a McDonalds. At the McDonalds, Detective Toney saw

3

Rangel's pickup truck and observed Rangel and another man exit the restaurant together.  The men were then detained by police, and officers found Rangel with $1,369 in cash and the other man with $2,060 and 2 pounds (0.91 kg) of marijuana.  Both men were arrested and charged.

Fairfax Police Department Lieutenant William Kitzerow testified about executing a search warrant for Rangel's residence on February 17, 1993, four and a half months after the McDonalds arrest.  Officers found three bricks of marijuana on a shelf in a bedroom closet and three additional bags of marijuana in a black bag underneath some clothing.  The combined marijuana weighed 5.25 pounds (2.39 kg).

Two of Rangel's alleged coconspirators, Michael Hillman and Ronnie Cadle, testified against him at trial about a broad marijuana trafficking operation.  Hillman stated that he was involved with the trafficking operation from late 1990 through his September 30, 1992 arrest at the 7-Eleven.  The group included approximately seven people, and Cadle and Hillman identified particular members of the operation by the names Lilo, Gringo, Leo, Flaco, and Rangel.  Evidence seized from Rangel's apartment corroborated his association with some of these individuals: a phonebook found in the bedroom contained entries for "Laylo" and "Gringo," and his wallet contained a business card for Lalo Maltos.  J.A. 341.

4

Hillman testified that he first became involved with the group in December 1990, when he was approached by Lilo, who offered to front him marijuana for resale. Subsequently, Hillman met Lilo "hundreds" of times, "[g]enerally, at his trailer in Chantilly," to buy single pounds of marijuana, which Lilo usually took from a stash of three to five pounds (1.36 to 2.27 kg). Id. at 113-14. In addition to Lilo, Hillman would see Gringo, Rangel, and others at the trailer. Specifically, Hillman testified that he "used to run into Abel [Rangel] at the trailer" and that "he sold me pot." Id. at 120. He testified that his September 30, 1992 arrest was the result of his attempt to buy one kilogram of marijuana from Rangel on behalf of his uncle, one of the other men present at the 7-Eleven.

According to Hillman, at some point, Lilo offered him $8,000 to drive to Mexico to pick up marijuana. In Mexico, Hillman visited a "farm thing in the country" where he saw "a big patch of marijuana growing" that "might have been an acre or a half acre." Id. at 117-18. He got two "potato sacks" of marijuana at "[m]aybe 20, 30, 40 pounds a sack" (13.6 to 22.7 kg). Id. at 118. A barn contained "tons of sacks" that he "th[ought]" contained marijuana, but which "[c]ould have been potatoes." Id. Hillman then drove to a designated spot in the United States, where he retrieved the marijuana acquired in Mexico from a person who had carried it across the border for

5

him in waterproof suitcases. Hillman and others packaged the marijuana in San Antonio, Texas and then took approximately 40 or 50 pounds (18.1 to 22.7 kg) of marijuana back to Virginia hidden in tires. During another trip, financed by Lilo, Hillman flew to Texas and rode a bus back to Virginia with approximately 30 to 40 pounds (13.6 to 22.7 kg) of marijuana.

Hillman estimated that he made between 5 and 10 trips to San Antonio to pick up marijuana. He also introduced Cadle to Lilo, and Cadle also began to make trips to San Antonio. Cadle testified that he made between 7 and 10 trips. At least one of Cadle's trips was with Hillman, but the extent of the overlap is unclear from their testimony.

Cadle testified that the group, including Rangel, instructed him to drive to San Antonio along a particular route. There, he would purchase marijuana, load it into the vehicle, and return to Virginia along another route that the group had also selected. Cadle testified that Rangel and Leo were his primary contacts for his final three trips. He "was paid a hundred dollars per pound" of marijuana he transported and made "25- to $50,000 in cash" bringing marijuana from Texas. Id. at 71, 100. Each trip normally involved 50 pounds (22.7 kg) of marijuana.

During one trip in August 1992, Rangel and Leo accompanied Cadle to San Antonio. Trooper Jackie Clark testified at trial

6

that he stopped the men on Interstate 40 in Arkansas. He searched Cadle's car and found $21,000 in cash in two paper sacks under the backseat. He seized the $21,000, but let the three men go. They continued toward San Antonio. Based on what Cadle could understand of the conversation Rangel and Leo had in Spanish after the stop, he "came to the realization not to worry about it" because "[t]here was more money in the car." Id. at 79-80. He believed the additional money was "in the range of between" $60,000 and $80,000. Id. at 79.

Cadle testified that upon their arrival in San Antonio, Rangel and Leo told him to leave his car and take a Greyhound bus back to Virginia. Cadle took the bus, carrying a suitcase containing approximately 50 pounds (22.7 kg) of marijuana. When he arrived in Virginia, Gringo picked him up at the bus station and took him to an apartment to meet Leo and Rangel. Cadle left the suitcase there, and two weeks later he drove back to San Antonio, retrieved his vehicle, and returned with another delivery of about 50 pounds of marijuana.

Cadle described the trip that led to his arrest in Mississippi on September 4, 1993. He flew to Dallas, Texas where he met Rangel and Leo, and they rented a 1988 Ford Thunderbird, which Cadle was tasked with driving back to Virginia. Officer David Pinson testified about stopping Cadle in the Thunderbird in Mississippi on September 4, 1993. Hidden

7

between the car's grille and radiator, he found several packages of marijuana, weighing a total of 27 pounds (12.2 kg).

Cadle also testified that he went to Lilo's trailer in Chantilly "[d]ozens of times."  Id. at 74.  Although Hillman testified Rangel was sometimes present when Hillman picked up pounds of marijuana, Cadle testified that he was "not really sure if [he] saw [Rangel] at the trailer" in Chantilly.  Id.

## B. Rangel's Verdict and Sentencing

The district court held a conference to discuss jury instructions, but Rangel's counsel did not request any instruction regarding drug weight.  Specifically, he did not request an instruction that the jury determine drug weight based on Pinkerton principles -- that is, based on drugs with which Rangel was directly involved or drugs that were reasonably foreseeable to him and in furtherance of the conspiracy.  See Pinkerton v. United States, 328 U.S. 640, 647-48 (1946).

In charging the jury, the only reference to drug weight came in the court's explanation to the jury of the Special Verdict Form:

> As to Count 1, if you should find the defendant guilty as to Count 1, then underneath are amounts of drugs and you should also check the amount that you find that was involved as to Count 1.

J.A. 203. The court provided no instruction explaining how the jury should determine the drug weight properly attributable to Rangel under the Pinkerton framework.

The jury convicted Rangel on all counts and indicated on the Special Verdict Form that the conspiracy "involved" more than 1,000 kg of marijuana. Based on the conviction for conspiring to distribute over 1,000 kg of marijuana, Rangel was subject to a 120-month mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(A). The presentence report established his advisory guideline range at 121 to 151 months. In advance of sentencing, Rangel filed a statement in which he "denie[d] having any part of the conspiracy" but did not make any objection to the mandatory minimum sentence or guideline calculation. J.A. 211.

Asked at sentencing whether he had anything to say on Rangel's behalf, his counsel replied, "Well there's not much you can say. It's, unfortunately, a mandatory 120-month sentence Mr. Rangel faces. . . . So we'd ask the Court to sentence him to the low end of the guideline range and appoint new counsel for the appeal." Id. Rangel's counsel did not address the calculation of the drug weight. The district court judge observed that "[c]onsidering the factors . . . under Section 3553 [is] sort of a useless endeavor in this case because there's a mandatory." Id. at 215. The judge, nevertheless,

9

noted that he "simply [could not] think of any kind of a factor that would weigh in [Rangel's] favor."  Id.

The district court sentenced Rangel to 121 months' incarceration, the low end of his projected guidelines range, as to each of Counts 1, 4, and 7, with the sentences to run concurrently.  This Court affirmed the judgment on appeal, and the Supreme Court denied Rangel's petition for a writ of certiorari.  United States v. Rangel, No. 10-5208, 2011 WL 5084583 (4th Cir. Oct. 26, 2011) (per curiam), cert. denied, 132 S. Ct. 1649 (2012).

### C. Rangel's § 2255 Petition

Rangel filed a pro se § 2255 petition to vacate his conviction and sentence on January 10, 2013, raising fourteen claims, two of which are the subject of this appeal.  First, he argued that his trial counsel rendered ineffective assistance by failing to request a jury instruction regarding Pinkerton principles and that his appellate counsel was also ineffective in not raising the instruction's absence as an issue on direct appeal.  (Below, we address this claim as two separate issues, one as to trial counsel and one as to appellate counsel.)  Second, Rangel asserted that his trial counsel was ineffective in failing to challenge the drug quantity and base offense level at sentencing.

10

The district court denied Rangel's § 2255 petition by concluding in a Memorandum Opinion and Order that even if there was an error regarding the jury instructions, Rangel could not demonstrate prejudice because he was sentenced within the applicable guideline range. The court further concluded that Rangel's trial counsel was not ineffective for failing to object to the offense level and guideline range at sentencing because of the jury's finding and the presentence report, which attributed 1,000 kg of marijuana to Rangel.

Rangel filed a timely notice of appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

When reviewing an appeal from the denial of a § 2255 motion, we review de novo the district court's legal conclusions. United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007).

To establish a claim of ineffective assistance of counsel, a defendant must show (1) that "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficiency prong, the defendant must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688. "Judicial scrutiny of

11

counsel's performance must be highly deferential." Id. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Higgs, 663 F.3d 726, 739 (4th Cir. 2011).

Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. There must be "a probability sufficient to undermine confidence in the outcome" of the trial. Id. However, a defendant is not required to establish that "counsel's deficient conduct more likely than not altered the outcome of the case." Id. at 693.

## A. Jury Instructions under Collins

Rangel bases his claim of jury instruction error on this Court's decision in United States v. Collins, 415 F.3d 304 (4th Cir. 2005). In that case, we considered on direct appeal the district court's failure to give an instruction "that, for purposes of setting a specific threshold drug quantity under § 841(b), the jury must determine what amount of cocaine base was attributable to [a drug conspiracy defendant] using Pinkerton principles." Id. at 314.

12

We concluded the failure to give such an instruction was error, but because the error concerned only the statute's penalty provision, the conspiracy conviction was "sound" under § 846.[1] Id. Further, we recognized that without the instruction the sentence given "effectively attributed to [the defendant], an individual member of the conspiracy, the quantity of cocaine base distributed by the entire conspiracy." Id. As a consequence, "[b]ecause the district court adopted the jury's drug quantity determination in its application of the sentencing guidelines, the error affected both the threshold statutory range under § 841(b) and the district court's application of the guidelines." Id. Because the district court's sentence in Collins was based on the jury's invalid drug quantity determination, it "c[ould ]not stand." Id.

The government concedes that the district court's failure to instruct the jury to find a drug weight properly attributable to Rangel based on Pinkerton principles was error under Collins.

### 1. Trial Counsel

Rangel first argues that his trial counsel rendered ineffective assistance because he did not request an instruction stating that the jury must determine drug weight using Pinkerton

---

[1] As in Collins, Rangel's underlying conviction is "sound" and there is no issue in this appeal as to his conviction, but only as to the sentence he received.

13

principles. The district court rejected this argument, reasoning that even if trial counsel's performance was deficient under Strickland, the error resulted in no prejudice.[2] The district court observed that Rangel "would nonetheless face a maximum term of twenty years imprisonment on Counts One, Four, and Seven" under the default penalty provision for marijuana. J.A. 409 (citing 21 U.S.C. § 841(b)(1)(C)). Regarding the guideline range, the district court found that the probation officer had "more than a sufficient basis" from evidence presented at trial to determine by a preponderance of the evidence that Rangel was accountable for over 1,000 kg of marijuana. Id.; see also U.S.S.G. § 1B1.3; United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002) (discussing the preponderance standard at sentencing). Thus, the base offense level -- which derived from the drug weight -- would remain the same, and the guideline range would remain at 121 to 151 months. The district court concluded that because Rangel's 121-month sentence was within "the statutory range of zero to twenty years," he "suffered no prejudice as a result of the alleged

---

[2] On appeal, the government also argues that Rangel's trial counsel's failure to request the instruction was not deficient performance under Strickland's first prong. The government reasons that the decision was a matter of trial strategy because Rangel's defense focused on actual innocence, not drug weight. Given that the request would have taken place outside of the jury's presence, the government's argument has no merit, and in any event, was not raised below and appears to have been waived.

14

failure of his counsel to object to the Court's jury instructions." J.A. 409.

We agree with the district court in part. In finding that the statutory range would be 0 to 20 years under the default penalty provision for marijuana, the district court misidentified 21 U.S.C. § 841(b)(1)(C) as the controlling subsection. While that would be correct for most drugs, the default sentencing provision for marijuana is found in § 841(b)(1)(D), which specifies that "[i]n the case of less than 50 kilograms of marihuana . . . such person shall . . . be sentenced to a term of imprisonment of not more than 5 years." The default statutory term for marijuana is thus 0 to 5 years rather than 0 to 20 years as the district court stated.

That mistake is without consequence here, however, as the district court was not constrained to review its sentence under only the default provision. Although resentencing under the default provision is a potential remedy for a successful direct appeal of a Collins error, a court's review of a Collins error for prejudice in the § 2255 context is not so constrained. Under Strickland, Rangel must show a reasonable probability of a different result, "sufficient to undermine confidence in the outcome" of the trial. 466 U.S. at 694. We do not find that Rangel meets that standard.

15

Our review of the record shows that Rangel's sentence would have been the same even with a proper jury instruction. First, there is no reasonable probability that a proper jury finding would have resulted in a statutory range that precluded Rangel's 121-month sentence. The jury would have needed to find Rangel responsible for only 50 kg of marijuana to push the statutory range from the 5-year maximum of § 841(b)(1)(D) to the 20-year maximum under § 841(b)(1)(C). In light of the overwhelming evidence that Rangel was responsible for substantially more than 50 kg of marijuana -- in particular, the multiple drug purchases in Texas -- there was no reasonable probability that the jury would have attributed less than 50 kg to Rangel. Rangel's statutory sentence range, then, would have had a maximum of at least 20-years, far exceeding his ultimate 121-month sentence.

Having concluded that the district court could have imposed a 121-month sentence had the Collins error not occurred, the question then becomes whether the district court would have imposed that sentence. Collins recognizes that if the district court "adopted the jury's drug quantity determination in its application of the sentencing guidelines," then that error will have "affected both the threshold statutory range under § 841(b) and the district court's application of the guidelines." 415 F.3d at 314. Consequently, Rangel must show a reasonable probability that, but for the Collins error, the district court

16

would have found him responsible for less than 1,000 kg, the amount that placed him in the 121- to 151-month guideline range.

The record demonstrates that in all likelihood, even without the Collins error, the district court would have found by a preponderance of the evidence that Rangel was responsible for 1,000 kg of marijuana. First, the jury established beyond a reasonable doubt that the conspiracy involved at least 1,000 kg, and there is no basis to conclude that Rangel would not have reasonably foreseen the conspiracy's full scope. Further, the trial testimony established that Rangel was a management figure in the conspiracy and helped coordinate multiple large-scale drug purchases. The record thus supports the district court's conclusion by a preponderance of the evidence that Rangel would have foreseen the full scope of the conspiracy, with its accompanying 1,000 kg of marijuana.

Moreover, independent of the jury finding, our review of the record shows that the district court would have attributed 1,000 kg of marijuana to Rangel. He was a management figure in a conspiracy that lasted several years, crossing half the country, and even extending into Mexico. More than that, Rangel was the point-man for numerous trips to Texas, where 50 pound (22.7 kg) quantities of marijuana were regularly obtained. In addition, Hillman testified as to the "hundreds" of times he bought pound quantities at the trailer, often with Rangel

17

present, and taken from a multi-pound stash (0.45 kg per pound). We thus conclude that the district court's finding that Rangel was responsible for 1,000 kg of marijuana was not the mere adoption of the Collins-error jury finding.

Nor does the record support Rangel's contention that the 10-year (120-month) statutory minimum affected his sentence. The district court's independent 1,000 kg finding resulted in a 121- to 151-month guideline range, and Rangel was sentenced at the bottom of that range. As the district court explained in denying Rangel's habeas petition, "[e]ven without the jury's finding, the base offense level would have been 32 based on the evidence presented at trial and the information contained in the Presentence Report." J.A. 411. Rangel emphasizes the judge's statement at sentencing that considering the § 3553 sentencing factors was "sort of a useless endeavor in this case because there's a mandatory" minimum sentence, but that statement addressed only the availability of a below-guideline sentence. Id. at 215. It is clear from the sentencing transcript that the district court considered Rangel undeserving of a below-guideline sentence: the judge "simply [could not] think of any kind of a factor that would weigh in [Rangel's] favor." Id.

In sum, the record supports the conclusion that a properly instructed jury would have attributed at least 50 kg of marijuana to Rangel, with a resulting statutory range of 0 to 20

18

years.  That statutory range would have included the 121- to 151-month guideline range from the court's independent 1,000 kg finding at sentencing.  In all likelihood, then, Rangel still would have received the same guideline range and the same 121-month sentence.  Having failed to demonstrate a reasonable probability of a different outcome, Rangel does not satisfy Strickland's prejudice prong on this issue.  Rangel's trial counsel, therefore, did not render constitutionally ineffective assistance by failing to request an instruction to determine drug weight based on Pinkerton principles under Collins.

## 2. Appellate Counsel

For similar reasons, we conclude that Rangel was not prejudiced by his appellate counsel's failure to raise the Collins error as an issue on direct appeal.[3]  To show prejudice in the context of appellate representation, a petitioner must establish a "reasonable probability . . . he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); see also United States v. Mannino, 212 F.3d 835, 845-46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but

---

[3] Because we resolve the claim under Strickland's prejudice prong, it is unnecessary to decide whether appellate counsel's omission of the Collins issue constituted deficient performance.

19

whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Having reviewed the record in this case, we conclude that Rangel's Collins claim would not have had a reasonable probability of success had it been raised on direct appeal. Because Rangel did not raise the issue at trial, the standard of review on appeal would have been plain error. To prevail, then, he would have had to show that 1) an error occurred, 2) the error was plain, and 3) the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993); see also Fed. R. Crim. P. 52. Affecting substantial rights, "in most cases," means that "the error must have been prejudicial: It must have affected the outcome of the district court proceeding." Olano, 507 U.S. at 734. This outcome-based standard is similar to Strickland's prejudice inquiry. Compare United States v. Marcus, 560 U.S. 258, 262 (2010) (prejudice, to prove an effect on "substantial rights" for plain error review, means "a reasonable probability that the error affected the outcome of the trial"), with Strickland, 466 U.S. at 694 (prejudice, to establish ineffective assistance, means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Finally, even with those three requirements met, we need not correct a plain error that "did not seriously affect

20

the fairness, integrity, or public reputation of judicial proceedings." United States v. Jeffers, 570 F.3d 557, 570 (4th Cir. 2009) (declining to notice a Collins error that did not seriously affect the trial's fairness); see also Olano, 507 U.S. at 736.

We have established that Collins errors satisfy the first two requirements: an error occurred and the error was plain. See, e.g., United States v. Foster, 507 F.3d 233, 251 (4th Cir. 2007). We conclude, however, that if there was error here, it did not affect Rangel's substantial rights because it did not affect the ultimate outcome of the sentencing phase of his trial. As explained above regarding Rangel's trial counsel claim, a properly instructed jury would have attributed in excess of 50 kg to Rangel, which would authorize a statutory maximum sentence of 20 years. Similarly, the district court would have then found Rangel responsible for 1,000 kg of marijuana by a preponderance of the evidence at sentencing, thus setting the 121- to 151- month guideline range. Because that finding would have resulted in the same 121-month sentence at the low end of the guidelines that Rangel received, the outcome would have been the same with or without a Collins error. Again, the district court stated this plainly: "Even without the jury's finding, the base offense level would have been 32 based on the evidence presented at trial and the information contained

21

in the Presentence Report." J.A. 411. Rangel provides no viable basis for his contention that the district court, despite its express statement, would have found him responsible for some lesser weight. See Olano, 507 U.S. at 734 (observing that on plain error review, the petitioner bears the burden of persuasion with respect to prejudice).

Because the record before us demonstrates that any Collins error would not have affected Rangel's substantial rights, a direct appeal on that issue would have had limited chance of success. Accordingly, Rangel does not demonstrate prejudice and therefore did not receive constitutionally ineffective assistance from his appellate counsel.

## B. Argument at Sentencing

Rangel next contends that his trial counsel provided ineffective assistance at sentencing by failing to challenge the district court's drug weight finding and the resulting guideline range.

For our purposes, it is sufficient to assume deficient performance and to turn again directly to the prejudice prong. In doing so, we conclude that Rangel suffered no prejudice; there is not a reasonable probability that he would have received a more favorable outcome had his counsel challenged the drug weight. As explained above, the district court found Rangel responsible for 1,000 kg based on the evidence at trial,

the probation officer's unchallenged representations, and the evidence presented in the presentence report. We need not speculate as to what the district court would have found, as it wrote unequivocally that it found 1,000 kg attributable to Rangel by a preponderance of the evidence, irrespective of the jury's finding. The guideline range and ultimate sentence flow directly from the district court's drug weight finding. Rangel points to no argument or factor that his counsel should have raised that the district court failed to consider and which might have changed its view. He accordingly fails to establish prejudice to support his claim that his trial counsel rendered ineffective assistance at sentencing by failing to object to the drug weight finding.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

23